[Civ. No. 2000.   Third Appellate District.—November 24, 1919.]

## C. L. LAWRENCE, Appellant, v. T. M. GOODWILL, Respondent.

[1] NEGLIGENCE — SUDDEN PERIL — ERRONEOUS JUDGMENT — LIABILITY FOR DAMAGE.—Where appalling circumstances of imminent danger or peril so suddenly and unexpectedly confront a person of ordinarily cool and calm temperament and judgment that he for the time loses his presence of mind or so finds himself in a position in which he is required to make up his mind as to the best or safest course to adopt to avoid the disaster which such circumstances threaten commensurately with the suddenness with which they arise, and damage or injury directly results from the exercise of an erroneous judgment in attempting to meet or overcome the peril of such circumstances, such person will not be held actionably responsible or liable for any injury or damage so caused.

[2] ID.—VIOLATION OF RULE OF ROAD—REQUIREMENT THAT DUE CARE BE EXERCISED.—While one who violates the law of the road by driving on the wrong side thereof assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road, the rule requiring drivers on highways to keep to the right when meeting other vehicles, or in overtaking another vehicle, whether statutory, of common-law origin, or contained in a municipal ordinance, is not a hard-and-fast rule to be adhered to under all circumstances.   Circumstances may confront a person, and often do, when care would require him to avoid or relinquish the side of the highway to which he would otherwise be entitled.   In such case he would be required to exercise such due care, and, if he failed to do so, he would be liable for negligence, even though he had placed himself upon the side to which he would ordinarily be entitled.

[3] ID.—PRIMA FACIE EVIDENCE OF NEGLIGENCE—REBUTTAL.—The fact that the driver of a vehicle has taken the wrong side of the highway when meeting or in overtaking another where damage occurs is not conclusive, but only *prima facie* evidence of negligence, which may either stand as proof of the fact or be overcome or rebutted by the circumstances of the particular case.

[4] ID.—AUTOMOBILE COLLISION — DETERMINATION OF JURY CONCLUSIVE.—In this action for damages for personal injuries sustained as the result of a collision between two automobiles on the state

1. "Emergency rule" as applied to automobile drivers, note, 6 A. L. R. 680.

2. Violation of statute or ordinance regulating movement of vehicles as affecting violator's right to recover for negligence, note, 12 A. L. R. 458.

highway, the question whether the defendant was negligent in entering upon the state highway and in turning to his left upon said highway on observing the approach of the plaintiff's machine toward the point at which he entered upon the highway was peculiarly one for the determination of the jury, and its verdict, so far as that question was concerned, was conclusive upon the appellate court.

[5] ID.—LAST CLEAR OPPORTUNITY — QUESTION FOR JURY.—The doctrine of the "last clear opportunity" proceeds upon the assumption or the concession that the party invoking it was himself guilty of negligence, but that the negligence of the other party was the proximate and efficient cause of the damage, because, having a *clear opportunity* of avoiding the accident or collision by the exercise of reasonable or ordinary care, his conduct, therefore, amounts to a willful, reckless, and wanton disregard of the duty which the circumstances of this case cast upon him; and whether it did in fact apply in this case and whether the defendant did or did not do all that he could reasonably have been expected to do to avoid the collision were solely for the jury's determination.

[6] ID.—PREPONDERANCE OF EVIDENCE — INCORRECT INSTRUCTION.—In this action, an instruction, reading in part: "By the preponderance of evidence is meant greater and superior weight of evidence which satisfies your mind. By a preponderance of evidence is not necessarily meant a greater number of witnesses, but if the plaintiff has proven the material allegations of his complaint by such evidence as satisfies and produces conviction in the minds of the jury, then he may be said to have proven his case by a preponderance of evidence. When you are satisfied that the truth lies with a single witness or with any number, you are justified in returning a verdict in accordance therewith. This is what is meant by a preponderance of proof. It is that character or measure of evidence which carries conviction to your minds," fell short of stating correctly the rule as to the preponderance of evidence which applies in civil cases, as that rule does not mean that the evidence shall be such as to satisfy and produce conviction in the minds of the jury, but means such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability is in favor of the party upon whom the burden rests, but a review of the entire record, including the evidence, precluded the appellate court from declaring that a miscarriage of justice resulted therefrom.

[7] ID.—TRAVELING AT EXCESSIVE SPEED — INSTRUCTED VERDICT NOT ERROR.—In such action it was not erroneous to instruct the jury that if they found that the plaintiff was driving his machine as

6. Preponderance of evidence as determined by mere number of witnesses, note, Ann. Cas. 1913D, 676.

he was approaching the intersection at a greater rate of speed than ten miles per hour, and that a collision occurred between the plaintiff's and the defendant's machines, and that the defendant was not guilty of contributory negligence at the time of the collision, it would be their duty to find for the defendant, not only on the complaint of the plaintiff, but also upon the cross-complaint of the defendant, for such damages as the evidence might show that the defendant had sustained by reason of such collision.

[8] ID.—CONSTRUCTION OF INSTRUCTIONS — ISOLATED PASSAGES NOT SEVERABLE.—A court, in charging a jury, is not required to state the case hypothetically in any one instruction or embrace therein all the conditions or qualifications necessary to a correct statement of the law governing all the evidential features of the case. The instructions must be considered in their entirety, and if, as so considered, they state the law of the case fairly and clearly, then they are, as a whole, unobjectionable, even though, by selecting isolated passages from single instructions, they may in some respects be amenable to just criticism.

[9] ID.—RIGHT OF WAY TO OPERATOR ON RIGHT—PROPER INSTRUCTION. An instruction that "While the law gives to the operators of vehicles on the right what is generally termed the 'right of way,' still it does not follow as a matter of law that upon the happening of a collision between two vehicles at the intersection of two public highways that the operator of the vehicle on the left is necessarily guilty of negligence. All the facts and circumstances surrounding the happening of the accident must be considered in determining whether such operator was in fact negligent. In other words, the law governing the operation of vehicles must be applied to the facts and circumstances of the case, and the law which gives to the operator of a vehicle on the right the so-called 'right of way' also contemplates that such operator of such vehicle is himself operating his vehicle in a careful and prudent manner, and with due regard to the safety of others," is a correct statement of the rule.

[10] ID.—INTERSECTING WAY — PROPER DEFINITION.—An instruction that "By the term 'intersection of public highway' is meant all space made by the junction of highways, and the space where one highway comes into another, although the highways do not cross," contains a proper definition of an intersection of two highways or

---

9. Rule of road governing vehicles proceeding in opposite directions, note, 41 L. R. A. (N. S.) 332.

Rule of road governing vehicles at intersection of streets and when turning a cross-street, note, 41 L. R. A. 336.

Liability for collision between automobiles at or near corner of streets or highways, note, L. R. A. 1916A, 745.

an intersecting way and conforms to that given by section 1, subdivision 14, of of the Motor Vehicle Act.

[11] ID.—UNLAWFUL RATE OF SPEED—PRESUMPTION OF NEGLIGENCE—
INSTRUCTIONS.—An instruction that if the jury should find that the plaintiff, at or immediately before the collision in question, was approaching the intersection of ways, and that his view of the traffic on the intersecting way was obscured, and that he was traveling at a rate of speed in excess of ten miles per hour, then, and in that event, the plaintiff *is* conclusively presumed *to* have been guilty of negligence at the time of the collision, is not subject to the objection that it omits to state the qualification that such negligence is not the determining factor unless it proximately caused or contributed to the accident in question, where in other parts of the instructions the court did submit that question to the jury.

[12] ID.—APPROACHING INTERSECTION — ASSUMPTION OF COMPLIANCE WITH LAW—RIGHT TO EXCEED SPEED LIMIT.—The fact that the plaintiff who was driving westerly had the right to assume that any person approaching the state highway from the intersecting road to the north would, upon entering upon the highway, proceed beyond the center of the intersection with the state highway before turning to the left to travel easterly did not give him the right to proceed in approaching the intersection when as near as fifty or sixty feet therefrom at the rate of thirty or even twenty-two miles per hour.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ostrander, Clark & Carey for Appellant.

Edward Bickmore for Respondent.

HART, J.—On the 23d of November, 1916, a collision occurred between an automobile driven by plaintiff and one driven by defendant, on the state highway, about three miles north of Atwater, in Merced County. Plaintiff was seriously injured and brought this action to recover damages, alleging that the collision occurred because of the negligence of defendant. A jury found in favor of defendant and judgment was entered in his favor for costs. From this judgment plaintiff appeals.

At the time of the accident there was a paved state highway running easterly from Livingston to Atwater, in said

county of Merced. This highway was sixty feet wide, the paved center thereof being fifteen feet wide. The distance from each edge of the pavement to the extreme edge of the right of way is twenty-two and one-half feet. At the point where the collision occurred a public highway from the north, forty feet in width, called the Cressey Road, intersected the state highway at right angles. It was an oiled road and did not cross the state highway, but when within about forty feet thereof the oiled portion divided, one portion going toward Atwater and the other toward Livingston. Between these two branches and the paved portion of the highway the unpaved portion was sandy. On the east of the Cressey Road and up to the highway was a dense grove of eucalyptus trees, which effectually prevented anyone coming from the direction of Atwater from seeing the Cressey Road.

On the day of the accident plaintiff was driving westerly along the state highway on the right-hand side of the road. The only time he had been on the highway before was two days previously, when he had driven to Fresno. He said he did not know there was a road behind the eucalyptus trees.

Defendant was driving on the Cressey Road southerly toward the highway. When he came to the point where the road forked he proceeded on the left-hand branch, which would bring him into the highway headed easterly toward Atwater. Plaintiff's version of what then happened is as follows:

"I first saw the defendant's machine as it came from this intersecting road; there was a little grove of eucalpytus trees that were an obstruction and prevented me from seeing it before that. I had no glimpse of the machine at all before it emerged on to the state highway. As I saw his car I was somewhat startled, as it was coming on, it was apparently coming right toward me. I made an effort to avoid the accident by swerving to the left. I did not get much of a chance to swerve to the left any distance; very little. I sought to apply the brake, and his car struck into mine. His right front wheel struck my right front wheel and turned it. . . . It jerked my steering-wheel at once, and almost strained my thumb, of course, took it away from

me. . . . I had never driven upon the Cressey Road and did not know of its existence.''

On cross-examination the witness testified: ''After the collision I was taken to Modesto; to the best of my knowledge I was unconscious immediately after the collision, I don't know how long. . . . I did not make any attempt to slow up my car previous to seeing Mr. Goodwill. After I saw Mr. Goodwill I made an attempt to stop my car, I think mechanically—instantaneously, you might say. I do not think if I had put on my brake immediately upon seeing him I might have stopped in time to avoid the accident. After I saw Mr. Goodwill, I would assume that I traveled fifty or sixty feet—fifty feet probably before the collision occurred. At the time of the collision I was traveling on the right of the highway, that is, the concrete highway, and Goodwill was coming in from my right in off the intersecting highway.'' He said that he was traveling about twenty or twenty-two miles per hour.

The defendant testified, that when the collision occurred he was driving at the rate of nine or ten miles an hour. He said: ''As I approached the road I put on, I went on low, and put my brakes, my foot on the brake in making the turn. When I made that turn I was going very slowly at that time. I was not going any speed at all, you might say. When I was making that turn it was probably less than half the speed I was coming down. I am pretty sure I was not going over half speed, five miles an hour. . . . Dr. Lawrence's machine was running very fast; it was running tremendously fast. I estimate the rate of speed it was making—I believe he was going over thirty miles an hour. . . . When I seen the other machine coming I realized that I could not pass in front of him, and I turned in the other way; I put my foot on the brake, and put the machine in low and turned in on the wrong side, you might say, that is, on the left-hand side.'' He said the collision occurred after he had gone six or eight feet. The right front wheel of the defendant's car was torn off as a result of the collision, and, while the defendant's machine was stopped suddenly from the force of the impact and remained standing at the point where the collision occurred, the plaintiff's car passed on for a distance of some twenty-five or thirty feet and toppled over on its side.

Section 22 (subdivision b), of the act of the legislature whereby the use and the operation of vehicles upon the public highways of the state are regulated (Stats. 1915, pp. 397, 409); at the time this accident occurred, provided, among other things, that no person should operate or drive a motor or other vehicle on any public highway "at a greater rate of speed than ten miles an hour where the operator's or chauffeur's view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways, or in approaching or traversing a crossing or intersection of ways, or in approaching or traversing a bridge, dam, trestle, causeway or viaduct, or in going around corners or a curve in a street or highway."

Section 1, subdivision 14, of the same act defines an "intersecting highway" as "any highway which joins another at an angle, whether or not it crosses the other."

That the Cressey Road is an "intersecting highway" within the above statutory description of such a highway there can, of course, be no doubt. Indeed, the cases and authorities so hold as to a road which, like the Cressey Highway, joins another at an angle. (See opinion of supreme court denying a hearing in the case *Muther* v. *Capps*, 38 Cal. App. 721, [177 Pac. 882]. See, also, Berry on Automobiles, pp. 234, 235; *Manly* v. *Abernathy*, 167 N. C. 220, [83 S. E. 343]; *Commonwealth* v. *Cassidy*, 209 Mass. 24, [95 N. E. 214]; *Hayes* v. *State*, 11 Ga. App. 371, [75 S. E. 523].)

The plaintiff contends that, notwithstanding his negligence, if any he was guilty of, the defendant himself was guilty of negligence which was the proximate and efficient cause of the collision and its consequences in failing to observe the law regarding the manner in which the operator of an automobile shall enter upon a highway from an intersecting highway, and further by failing to exercise ordinary care to avoid a collision after getting on the state highway and observing the approach of the plaintiff toward the intersection. The first of these propositions involves the charge that the defendant was guilty of an affirmative act of culpable negligence, and the second the doctrine known and designated in the cases and the books as the "last clear opportunity." The argument in support of the first is

that, in entering the state highway, the defendant should
have done so at right angles from the Cressey Road across
the center of the concrete portion of the state highway and
then have turned his machine to his left in proceeding to-
ward Atwater or Merced, in which direction it was his pur-
pose to go and from which direction the plaintiff was at
the time of the accident traveling. The answer to this
proposition is that the jury impliedly found upon evidence
sufficient to sustain their conclusion that the defendant was
not negligent in proceeding as he did. Adverting briefly to
the evidence bearing upon the act of the defendant in en-
tering upon the state highway as it is admitted that he did,
it is first to be observed that he took the course in driving
upon the state highway which the direction over the latter
thoroughfare he intended to take would naturally suggest.
In the second place, there is evidence which shows that, had
he taken the course which counsel for plaintiff insist that it
was his duty to take—that is, at right angles from the Cres-
sey Road, or the right of the two branches or forks of
that road at the state highway, he would necessarily have
been led into the soft sand on the southerly side of the con-
crete portion of the state highway. In the third place, there
is evidence from which the jury could well have concluded,
as presumptively they did so find, that had the defendant
attempted, under the circumstances, to cross the center of
the state highway, the plaintiff's machine would have struck
his (defendant's) machine in the center. In other words,
the jury were well within the record evidence in finding,
as their verdict implies that they did find, that, considering
the distance of plaintiff's car from the intersecting way
and the rate of speed at which the latter was driving at the
point of time when the defendant emerged from the Cressey
Road and entered upon the state highway, the defendant could
not with safety have crossed or attempted to cross the center
of the state highway. At any rate, the jury could well have
found that, under the circumstances which so suddenly and
unexpectedly surrounded the defendant and which were of
such a character as to afford little opportunity for the aver-
age person to determine what course of conduct was the
best and safest to pursue, the defendant, rather than being
guilty of culpable negligence in entering upon the state
highway from the left-hand branch or fork of the Cressey

Road and swerving his machine to the left on the state highway as he observed the near and rapid approach of the plaintiff's machine, merely failed to exercise what ordinarily might be his better judgment. [1] Common experience tells us that instances often occur in which appalling circumstances of imminent danger or peril so suddenly and unexpectedly confront persons of ordinarily cool and calm temperament and judgment that they for the time lose their presence of mind, or so find themselves in a position in which they are required to make up their minds as to the best or safest course to adopt to avoid the disaster which such circumstances threaten commensurately with the suddenness with which they arise. This appears to be one of such cases; and the courts have uniformly held that in such cases, in which damage or injury has directly resulted from the exercise of an erroneous judgment in attempting to meet or overcome the peril of such circumstances, the party whose act has thus caused the injury will not be held actionably responsible or liable for any injury or damage so caused. Or, as this proposition is stated as follows, in *Towsley* v. *Pacific Elec. Ry. Co.*, 166 Cal. 457, [137 Pac. 31], quoting the syllabus: "A person in great peril, when immediate action is necessary to avoid it, is not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances." (See, also, Shearman & Redfield on Negligence, sec. 89; *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 490, [66 Pac. 734]; *Stapp* v. *Madera Canal & Irrigation Co.*, 34 Cal. App. 41, [166 Pac. 823]; *Ellis* v. *Central Traction Co.*, 37 Cal. App. 390, [174 Pac. 407, 411].) [2] Moreover, while it is true that one who violates the law of the road by driving on the wrong side thereof assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road, still the rule requiring drivers on highways to keep to the right when meeting other vehicles, or in overtaking another vehicle, whether statutory, of common-law origin, or contained in a municipal ordinance, is not a hard-and-fast rule to be adhered to in all circumstances. "Circumstances may confront a person, and often do, when care would require him to avoid or relinquish the side of the highway to which he would otherwise be

entitled. In such case he would be required to exercise such due care, and, if he failed to do so, he would be liable for negligence, even though he had planted himself upon the side to which he would ordinarily be entitled. In all cases the ultimate question is: What was required by due care, under all the circumstances confronting the driver at the time?'' (Berry on Automobiles, pp. 205, 206; *Bauhofer* v. *Crawford*, 16 Cal. App. 676, [117 Pac. 931]; *Neddy* v. *Littlejohn*, 137 Iowa, 304, [115 N. W. 483]; *Herdman* v. *Zwart*, 167 Iowa, 500, [149 N. W. 631].) [3] In other words, the fact that the driver of a vehicle has taken the wrong side of the highway when meeting or in overtaking another where damage occurs is not conclusive, but only *prima facie* evidence of negligence, which may either stand as proof of the fact or be overcome or rebutted by the circumstances of the particular case.

[4] It follows from the foregoing considerations that the question whether the defendant was negligent in entering upon the state highway and in turning to his left upon said highway on observing the approach of the plaintiff's machine toward the point at which he entered upon the highway was peculiarly one for the determination of the jury, and, of course, the verdict, so far as that question is concerned, is conclusive upon this court.

As to the doctrine of the ''last clear opportunity,'' invoked by plaintiff against defendant, we first remark that it is, to our minds, very doubtful whether the evidence is such as to make the application of that rule pertinent to this case. We have seen that the plaintiff, on his own admission, when first observed by the defendant after the latter had left the Cressey road and entered upon the state highway, was a distance approximately of between fifty and sixty feet only from the intersection of the two roads and that he was then traveling at the rate, approximately, of from twenty to twenty-two miles per hour, according to his own admission, and about thirty miles per hour, according to the defendant's testimony. Even accepting the plaintiff's estimate of the rate at which he was then traveling, his machine was going at the rate, approximately, of more than thirty feet per second, or the sixty feet, the approximate distance he was from defendant at the point of time when the latter entered upon the state highway, in two sec-

44 Cal. App —29

onds, approximately, hence both the plaintiff and the defendant were limited to that exceedingly brief period of time within which to make up their minds what course of conduct either should pursue.  Manifestly, if the plaintiff was not thus afforded sufficient time within which to determine what ought to be done to avoid a collision, then it can hardly be said that the defendant was afforded sufficient time to have exercised such care as would have avoided the accident, or, in other words, have had available to him the time to form a reasonably rational conclusion as to what was the safest course for him to adopt.  [5]  The doctrine of the "last clear opportunity" proceeds upon the assumption or the concession that the party invoking it was himself guilty of negligence, but that the negligence of the other party was the proximate and efficient cause of the damage, because, having a *clear opportunity* of avoiding the accident or collision by the exercise of reasonable or ordinary care, his conduct, therefore, amounts to a willful, reckless, and wanton disregard of the duty which the circumstances of the case cast upon him.  But the doctrine means precisely what its judicial designation implies—that there must be a *clear opportunity* to avoid the accident by the exercise of ordinary care, and where there is no such opportunity present in a case, then the doctrine obviously does not apply.  As above suggested, we seriously doubt its application to the facts of this case.  But, conceding that there is some room for its application, then the question whether it does in fact apply here, and the further question whether the defendant did or did not do all that he could reasonably have been expected to do to avoid the collision, were solely for the jury's determination.  We cannot, in other words, say upon the evidence that, as a matter of law, the defendant was afforded a *clear opportunity,* by the exercise of the proper degree of care, to have avoided the collision; nor that he did not do so.

[6]  The plaintiff next complains of the action of the court in giving and refusing to give certain instructions. It is first contended in this particular that the instruction defining the meaning of the phrase, "preponderance of evidence," as applied to civil cases is erroneous and operated prejudicially upon the rights of the plaintiff.  The instruction reads, in part, as follows: "By the preponderance

of evidence is meant greater and superior weight of evidence which satisfies your mind. By a preponderance of evidence is not necessarily meant a greater number of witnesses, but if the plaintiff has proven the material allegations of his complaint by such evidence as satisfies and produces conviction in the minds of the jury, then he may be said to have proven his case by a preponderance of evidence. When you are satisfied that the truth lies with a single witness or with any number, you are justified in returning a verdict in accordance therewith. This is what is meant by a preponderance of proof. It is that character or measure of evidence which carries conviction to your minds.''

It is said that an instruction very much similar to the foregoing was condemned in *People* v. *Miller,* 171 Cal. 649, [154 Pac. 468]. The instruction in that case defined ''preponderance of evidence'' in this language: ''Preponderance of the evidence means that degree of evidence which proves to a moral certainty, or, in other words, that degree of proof that produces conviction in an unprejudiced mind, regardless of the number of witnesses from whom it proceeds.''

It will be observed that there is considerable difference between the instruction challenged here and the instruction given in the Miller case. The latter instruction, in attempting to define the meaning of the phrase, ''preponderance of evidence,'' plainly describes or defines the rule as to the degree of proof essential to the conviction of a defendant in a criminal case and was clearly erroneous. The two instructions are, as stated, noticeably dissimilar. Still, we think the instruction here goes too far or, rather, falls short of stating correctly the rule as to the preponderance of the evidence which applies in civil cases. As we understand that rule, it does not mean that the evidence shall be such as to *satisfy and produce conviction* in the minds of the jury, but, as the supreme court says, in *People* v. *Miller, supra,* quoting from *Hoffman* v. *Land,* 111 Mich. 156, [69 N. W. 231], it means ''such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the *greater probability* (italics ours) is in favor of the party upon whom the burden rests.'' Of course, it is correct to say of the rule as to the preponderance of the evidence that ''the evidence of one party must

be more weighty, convincing and satisfactory than the proof adduced by the other party," but this does not mean that the evidence must satisfy and produce conviction in the minds of the jury, or the court, if the case be tried before it without a jury. To "satisfy" is to free one's mind from doubt or uncertainty; to set at rest the mind upon a given proposition; to convince (Webster's Dictionary); and the same authority says that "conviction" is to be convinced. In using the word "satisfied" as expressing the discharge of an obligation, we understand it to mean a full and complete termination of the transaction as to such obligation between the obligor and obligee. So, in saying that by the phrase "preponderance of evidence" it is meant that the jury or judge must be *satisfied* or of the *conviction* that the evidence establishes the affirmative of the issue, we in effect say that that proof must be such as to remove from the mind of the judge or the jury all doubt or uncertainty upon the issue to be decided. In *People* v. *Miller, supra,* the chief justice says: "The party on whom rests such burden having produced sufficient evidence to support a conclusion in his favor, opposing evidence may also have been introduced, and then only does the question of preponderance of evidence arise. The situation may be that in view of the opposing evidence, the jury is in doubt, and not at all satisfied or convinced. In such a situation the decision must be based upon the preponderance rule. If in the opinion of the jury the testimony preponderates in favor of the one on whom the burden of proof does not lie, or is equally balanced, the decision must be in his favor, and if it preponderates ever so slightly in favor of the other party, he is entitled to a verdict." The foregoing is a singularly clear exposition of the rule as to the preponderance of the evidence, and viewing the instruction complained of here by the light of the rule as it is thus explained, it is very clear that it does not, as above declared, correctly define the meaning of the phrase "preponderance of evidence." But, while the instruction is justly subject to the above criticism, it is, as before stated, much less vulnerable than the one considered and condemned in the Miller case, *supra,* and, we think, much less likely to produce injury than the instruction in said Miller case; for, in the latter case, which involved a charge of public crime against the defendant, the trial court explained to the

jury the degree of proof requisite to a conviction of the accused, and had correctly explained the meaning of the doctrine of reasonable doubt as applicable to criminal cases; and on top of that gave, in response to the defense of insanity set up by the defendant, the instruction referred to which, in effect, as we have said, was not different from the rule of reasonable doubt applicable alone in criminal cases. The instruction referred to was the only one given by the court in the Miller case on the preponderance rule.   Thus readily it can be perceived that, with an instruction on the preponderance rule as applied to a civil issue defined practically the same as the court had correctly defined the rule of reasonable doubt or the rule as to the degree of proof required to establish a crime against an accused, the jury could have formed, and probably did form, the conclusion that there was no distinction between the degree of proof necessary to justify a conviction of the defendant and the nature and extent of the burden resting upon the defendant to sustain his defense that he was insane when he committed the act with which he was charged and hence was not responsible in law for said act.   Quite obviously, the situation thus produced was such that no other conclusion could follow than that the effect of the instruction on the preponderance rule was to prejudice the rights of the defendant in that case.   But in this case the instruction does say that by "preponderance of evidence" is meant "the greater and superior weight of evidence," and that superior or greater weight is not to be tested or determined by the fact that the greater number of witnesses may be found on one side, but such *weight* of the evidence as "satisfies your minds."   In other words, that language of the instruction might justly be construed to mean (and we cannot say that the jury did not so understand it, since there was not given, as was necessarily done in the Miller case, an instruction on the degree of proof essential to a conviction in a criminal case) that the jury must be satisfied or of the conviction from the evidence, not that the truth was on the side of the party holding the laboring oar, but that the greater *weight* of the evidence was on his side. Besides the foregoing observations relative to the point in hand, we may also consider that, at the request of the plaintiff, the court instructed the jury upon the degree of the

burden resting upon him as follows: "In civil cases the affirmative of the issue must be proven; the affirmative being upon the plaintiff, upon him therefore rests the burden of proof and he must establish his case by a preponderance of the evidence; that is to say, by the greater weight of the evidence." This is a correct abstract statement of the rule, and, considered with that portion of the criticised instruction that the weight of the evidence is not alone or necessarily determinable according to the greater number of witnesses on the one side or the other, it must be said that the jury, assuming, as we must, that they were men of ordinarily fair intelligence, must thus have been made to understand that the rule as to the preponderance of the evidence as applied to civil cases does not measure up to the greater requirements of the rule in criminal cases as to the degree of proof which will alone justify a conviction. Thus it will readily be perceived that the situation here with respect to the instruction now in question is altogether different from that which existed in the case of *People* v. *Miller, supra.* Furthermore, while it might be that a verdict for the plaintiff might be upheld on appeal under the rule by which the appellate courts are always to be guided in considering questions of fact, still the evidence appears clearly to justify the verdict here. There is nothing in the character of the evidence on its face which justifies us in holding otherwise. Hence, we cannot say that, even with the imperfections of the criticised instruction, the plaintiff was prejudiced by it. In fact, we find a situation here where we are precluded from declaring, after a full and careful review of the entire record, including the evidence, that a miscarriage of justice resulted from the giving of the instruction complained of. (Const., art. VI, sec. 4½.)

[7] The appellant insists that the court practically took the case out of the hands of the jury by instructing them that, if they found that the plaintiff was driving his machine as he was approaching the intersection at a greater rate of speed than ten miles per hour, and that a collision occurred between the plaintiff's and the defendant's machines, and that the defendant was not guilty of contributory negligence at the time of the collision, it would be their duty to find for the defendant, not only on the complaint of the plaintiff, but also upon the cross-complaint of the

defendant, for such damages as the evidence might show
that the defendant had sustained by reason of such collision.
The instruction is said by appellant to be erroneous because
it did not permit the jury to consider the distance plain-
tiff's automobile was from the intersection of the two high-
ways, at the time of the collision, nor permit the jury to
consider the question whether the doctrine of the "last clear
chance" applied, or whether the negligence of plaintiff in
driving at a greater rate of speed than ten miles per hour
proximately caused the collision. The charge of the court
contained specific instructions as to all the matters which
counsel declare were not included within the instruction
under review. On the doctrine of the last clear chance or
opportunity, and upon the question whether the negligence
of the plaintiff, if any, was the proximate cause of the col-
lision, the court gave specific instructions. The instruction
complained of must be viewed by the light of the facts
as disclosed by the evidence and considered as a part only
of the charge of the court. [8] A court, in charging a
jury, is not required to state the case hypothetically in any
one instruction or embrace therein all the conditions or
qualifications necessary to a correct statement of the law
covering all the evidential features of the case. The in-
structions must be considered in their entirety, and if, as so
considered, they state the law of the case fairly and clearly,
then they are, as a whole, unobjectionable, even though, by
selecting isolated passages from single instructions, they may
in some respects be amenable to just criticism.

The next instruction assailed by the appellant reads: "By
the term 'intersection of public highway' is meant all space
made by the junction of highways, and the space where one
highway comes into another, although these highways do not
cross. And you are instructed that if you find from the
evidence adduced in this case that plaintiff Lawrence, at
the time of the collision in question, was approaching or
crossing an intersecting highway, and that the defendant
Goodwill was coming on to or crossing the highway on
which plaintiff was traveling from an intersecting highway,
and from the right of plaintiff, then, in that event, de-
fendant Goodwill was entitled to the right of way of cross-
ing, or coming upon said highway. And if the plaintiff did
not yield the right of way to the defendant, the plaintiff

was guilty of negligence in so operating his said automobile and in not yielding the right of way to the defendant, and if such negligence was the proximate or direct cause of the collision of the automobiles of plaintiff and defendant, and the defendant suffered injury by reason of said collision, and was not guilty of contributory negligence himself, then your verdict should be for the defendant, not only upon the complaint of plaintiff, but also upon the cross-complaint of the defendant, for such damages as the evidence shows was suffered by the defendant by reason of such collision.''

The court, it is conceded by appellant, elsewhere gave in its charge a proper instruction as to the question of ''right of way,'' but it is claimed that the instruction here criticised is in conflict with the proper instruction and, therefore, does not state the law correctly. We do not think so. It states, in effect, that, if from the evidence the jury found that the defendant entered upon the state highway to the right of plaintiff, then the defendant was entitled to the right of way of the crossing, ''or crossing on said highway.'' So far the instruction clearly states the law. But it proceeded to say, unqualifiedly, that if in such case the plaintiff did not yield the right of way to the defendant, ''the plaintiff was guilty of negligence in so operating his automobile and in not yielding the right of way to the defendant,'' and then declares that if the collision was proximately caused by such negligence, and the defendant suffered injury by reason of said collision, and was himself not guilty of contributory negligence, then the verdict should be for the defendant, both upon the complaint of the plaintiff and the cross-complaint of the defendant. Of course, taken alone, the latter part of the instruction would not be broad enough or sufficiently explicit. Whether in such case as is stated by that part of the instruction the plaintiff would be culpable in law and the defendant entitled to damages would depend upon the circumstances of the case. It is not in all cases that the failure of the party to yield the right of way to another on the road constitutes actionable negligence. As in this case, the circumstances of the collision might have arisen so suddenly as not to afford to a driver an opportunity to make up his mind which would be the better course to adopt to avoid what might appear to be an impending collision, or the exigencies of the situation might

appear to a driver to be such as to require him to take the
left of the road. And this very proposition was explained
by the court in the instruction referred to as stating cor-
rectly the law as to the right of way over highways. The
court therein said to the jury, in part: [9] "While the
law gives to the operators of vehicles on the right what is
generally termed the 'right of way,' still it does not follow
as a matter of law that upon the happening of a collision
between two vehicles at the intersection of two public high-
ways that the operator of the vehicle on the left is neces-
sarily guilty of negligence. *All the facts and circumstances
surrounding the happening of the accident must be consid-
ered in determining whether such operator was in fact negli-
gent.* (Italics ours.) In other words, the law governing
the operation of vehicles must be applied to the facts and
circumstances of the case, and the law which gives to the
operator of a vehicle on the right the so-called 'right of way'
also contemplates that such operator of such vehicle is him-
self operating his vehicle in a careful and prudent man-
ner, and with due regard to the safety of others."

The foregoing involves a clear and correct statement of
the rule and fully supplies the shortcoming of the criticised
instruction, as to which, it is further to be remarked, as we
observed in considering above another challenged instruc-
tion, that it must be viewed and considered, not singly or
alone, but in connection with the entire charge of the court.
That the instruction is pertinent enough to the evidence
is borne out by the testimony of the defendant that he en-
tered the state highway with the intention of crossing the
center thereof to the right, but, on seeing the plaintiff's
machine and observing the rapid rate at which it was trav-
eling and its near proximity to the point of intersection,
he suddenly swerved his machine to the left, believing that
course to be the surest way of preventing a collision.

[10] Nor does the instruction contain an erroneous de-
scription of an intersection of two highways or an intersect-
ing way. The definition given by the instruction of an inter-
section or intersecting way conforms to that given by section
1, subdivision 14, of the Motor Vehicle Act, and also section
22a of the same act, prescribing the rates of speed to which
drivers of vehicles are limited in traveling over public high-
ways under the several different conditions therein given

or prescribed.    (See, also, the cases above cited on this proposition.)

[11] The appellant earnestly objects to instruction No. 45, given by the court, claiming that it does not embrace a correct statement of the law and that its effect was seriously to injure his rights at the trial.    The instruction first told the jury that if they should find that the plaintiff, "at or immediately before the collision in question, was approaching the intersection of ways, and that his view of the traffic on the intersecting way was obscured, and that he was traveling at a rate of speed in excess of ten miles per hour, then, and in that event, the plaintiff is conclusively presumed to have been guilty of negligence at the time of the collision."    Counsel in substance declare that that part of the instruction is faulty because it omits to state the qualification that such negligence is not "the determining factor unless it proximately caused or contributed to the accident" in question.    The rule is, as stated by the court in the instruction, that the acts of persons violating the law regulating the rate of speed at which vehicles or automobiles, under certain given circumstances, may be run on public highways, constitutes conclusive evidence of negligence.    (*Scraggs* v. *Sallee*, 24 Cal. App. 144, [140 Pac. 706], and the many cases therein named.)    This is not to say, of course, where a collision or some other accident has occurred, and the driver of one of the colliding automobiles, or one of the machines mixed up in the accident, has violated the speed limit prescribed by the law, that the latter's negligence was or is conclusively presumed to have been the proximate cause of the collision or the other accident. Whether such negligence was the proximate cause is a question which must be determined under proper instructions by the jury.    And, in this case, in other parts of its charge, the court did submit that question to the jury, telling them in readily understandable language that it was for them to say, from all the facts and circumstances of the case, whether the plaintiff's negligence, if they found him to have been guilty of negligence by exceeding the speed limit, was the direct and the efficient cause of the collision.

Again, the same instruction is attacked upon the ground that it eliminates the "last clear chance" doctrine and is in conflict with the instruction given on that question, and that

it is further defective in that it erroneously defines the degree of negligence which is involved in the omission by a person so to regulate his conduct as to avoid an accident when he has ample opportunity to do so. The part of the instruction now referred to declares that, if the plaintiff was guilty of negligence by driving beyond the prescribed speed limit in approaching the intersection, and if such negligence was the cause of the collision, then the verdict should be in favor of the defendant on the complaint and the answer, "unless you should find from the evidence that the defendant, after perceiving the dangerous situation then and there existing, and becoming aware of the presence of the plaintiff, did recklessly or willfully or wantonly send or drive his automobile forward." Then follows a definition of the adverbs, as used in the instruction, "recklessly," "wantonly," and "willfully," to wit: that "'recklessly' means with wanton disregard of all consequences and is synonymous with 'wantonly'; and the adverb 'willfully,' . . . means 'designedly,' 'purposely,' 'perversely,' 'with a set purpose' or 'obstinately.'"

It will be observed that the claim that the instruction disregards the doctrine of the "last clear opportunity" is untenable. The instruction, on the contrary, expressly recognizes that doctrine by employing it as a qualification of the statement that if the negligence of the plaintiff, if he was found to have been negligent, was the direct cause of the collision, the defendant would be entitled to a verdict.

As to the criticism of the definition ascribed in the instruction to the adverbs descriptive of the manner in which the defendant would be required to act to excuse the negligence of the plaintiff, counsel declare that the instruction, in defining the meaning of those words, practically told the jury that the defendant could not be held responsible for his conduct unless it appeared that, having perceived the peril of the plaintiff, he intentionally ran his automobile into that of the plaintiff. Although the court defined the adverb "willfully" as it is defined in the dictionary, it is, of course, true that, in using it in an instruction explaining the doctrine of the "last clear chance," it is to be given and understood in a much more restricted sense than that given to it by the dictionary or by the law when it is used in another connection, as, for instance, when it is employed to

characterize the operation of the mind of one committing a
public crime. Obviously, to charge one with culpable negli-
gence who, having a clear opportunity to do so, fails to
avoid an accident and consequent injury to another, it is
only necessary to show that the former failed to exercise
ordinary care to prevent the accident. If it be shown
that he deliberately and willfully, in the real sense of those
terms, caused the accident and the injury, he would then be
no less guilty of a public crime than if he had assaulted
another by other means without legal cause or had likewise
produced his death. While, however, the instruction com-
plained of should have been made clearer or more explicit in
the respect here considered, we do not think the jury could
have understood it to mean that to render the defendant
culpable his act must have been willful or designed, for, in
the first place, there is no evidence indicating in the slight-
est degree that it was so, and, in the second place, in the
absence of a motive for so foolish and so criminal an act, no
one would suppose it to be probable or even possible that a
person possessed of ordinary good sense would imperil him-
self or his property by deliberately or willfully running his
automobile into that of another as the two were traveling
at a pretty fair rate of speed in opposite directions. We,
therefore, think that it is altogether probable that the jury
were not influenced in their consideration of the case by
the fact that the court defined in the instruction the words
referred to as they are defined by the dictionary.

It is finally contended that prejudicial error was in-
volved in the action of the court in refusing to allow an
instruction preferred by the plaintiff, declaring, in effect,
that, since the motor vehicle law limiting the rate of speed
of automobiles when approaching an intersection, where a
view of the intersecting way is obstructed, to ten miles an
hour, does not define what distance from such intersection
a person, if driving at a greater rate of speed than ten
miles per hour, must reduce the speed of his machine to
that number of miles per hour, it was the duty of the jury
to determine what is or would be a reasonable distance from
such intersection at which the driver should diminish his
speed so as to conform it to the ten-mile limit by the light
of all the circumstances surrounding the operation of such
vehicle. The instruction further declared that the plaintiff,

"in operating his automobile, had the right to anticipate that any person operating a vehicle upon the Cressey Road would, before turning to the left, proceed beyond the center of its intersection with the state highway."

That instruction could well have been given without doing harm to anybody, but we cannot say that its disallowance in any manner or degree prejudiced the case of the plaintiff. The words "approach" and "approaching" mean to "draw near; a coming or advancing near; to come near to in time or place or character." As used in the Motor Vehicle Act, it speaks for itself and obviously was intended to mean that the operator of an automobile, when going toward an intersection of two highways, a view of either of which by one traveling on either is obstructed for a short distance to the point of intersection, should, if he has been traveling at a greater rate of speed than ten miles per hour, reduce his speed to ten miles per hour at such distance from the point of intersection as will enable him so to regulate or control the operation of his machine as that, in case of the sudden or unexpected appearance of another automobile from the other highway on the highway on which he is traveling, he can the more readily avoid a collision between the two machines. But, of course, in any case in which arises the question whether the operator of an automobile reduced the speed of his machine to ten miles an hour at a reasonable or proper distance from an intersection, it is for the jury to determine that issue from the general situation of the surroundings of the intersection and upon the circumstance of whether the intersecting way is or is not ordinarily subject to heavy traffic. And the question is one largely of argument by counsel based upon all the facts and circumstances. Without being told by the court that it was their duty to do so, the jury would know, if they knew enough to act as jurors, that, before they could reach a just conclusion upon the question whether the operator was guilty of negligence in not reducing the speed of his machine to the limit prescribed on approaching an intersection, they would have to determine, from all the circumstances of the case and the conditions surrounding the intersecting way, whether he diminished his speed to the required rate at a safe and proper distance from the point of intersection. There is, however, another consideration which rendered the

act of refusing to give the instruction harmless, and that is in the fact that there is no evidence satisfactorily showing that the plaintiff at any time before the collision reduced the speed of his machine to ten miles per hour. He said that he attempted to do so, but did not say that he succeeded.

[12] As to the latter part of the refused instruction, it is to be observed that it is true, of course, that the plaintiff had the right to assume that any person approaching the state highway from the Cressey Road would, upon entering upon the highway, proceed "beyond the center of the intersection with the state highway" before turning to the left; but the fact that he had the right so to assume did not give him the right to proceed in approaching the intersection when as near as fifty or sixty feet therefrom at the rate of thirty miles per hour, or, even as he himself admitted, at the rate of twenty-two miles per hour. If there had been evidence tending to show that the plaintiff had reduced the speed of his automobile to ten miles per hour before the defendant appeared on the state highway, then, undoubtedly, such an instruction as we are now considering should have been given, but to tell the jury, as the proposed instruction might well have been understood to mean, that the plaintiff had the right to proceed at the rate of twenty-two or thirty miles per hour as he approached the intersection upon the assumption that the operator of an automobile entering the state highway from the Cressey Road would do so in strict accord with the regulations prescribed by the law in that particular, would have been misleading and, if so understood, probably productive of an erroneous result.

We have now considered all the objections made by the appellant to the charge of the court, and have done so because of the manifest earnestness with which counsel have endeavored in their briefs to support their view that the several instructions complained of not only involve erroneous statements of the principles which they were designed to enunciate, but must have had the effect of prejudicing the rights of the plaintiff. It may be added, generally, that the instructions referred to are not, as we have tried to show, so vulnerable but that it can justly be said as to all of them, as we have already said of one of them, that after a full

and fair consideration of the record, including the evidence, we cannot hold that a miscarriage of justice has resulted in this case from any inaccuracies which they may contain.

The judgment is affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1920.

Shaw, J., Lawlor, J., Lennon, J., Olney, J., and Kerrigan, J., *pro tem.*, concurred.