[Civ. No. 8647. Second Appellate District, Division Two.—September 4, 1934.]

A. L. TROWBRIDGE et al., Plaintiffs and Respondents, v. J. A. BRIGGS et al., Appellants; F. M. MEEK, Cross-Defendant and Respondent.

John Coker for Appellants.

Arthur W. Eckman and Louis Thomsen for Plaintiffs and Respondents.

David D. Stuart for Cross-Defendant and Respondent.

WILLIS, J., *pro tem.*—Appellants herein, J. A. Briggs and Marie Plane Briggs, his wife, appeal from a judgment for damages in favor of respondents (plaintiffs below) A. L. Trowbridge and Mamie Trowbridge, his wife, and from a judgment in favor of respondent (a co-defendant below) F. M. Meek upon a cross-complaint of appellants against him, and from an order denying the motion for new trial made by appellants.

The respondents Trowbridge and wife, as plaintiffs, commenced this action against Briggs and wife and respondent F. M. Meek, as well as several other defendants sued under fictitious names under one of which Beverly Building Material Company, a corporation, answered. The action is for damages to person and property arising from an automobile collision on the Roosevelt highway near Malibu, in Los Angeles County, between the automobile occupied and operated by plaintiffs and that occupied and operated by defendants Briggs and wife, the latter being the driver at the time of collision. Defendants Briggs and wife, Meek and Beverly Building Material Company answered separately, and with their answer appellants filed a cross-complaint against their co-defendants Meek and Beverly Building Material Company, to which they in turn filed their answer. The cause was tried without a jury, findings and conclusions were filed and judgment entered thereon as above recited, from which Briggs and wife prosecute this appeal. Cross-defendant Beverly Building Material Company was granted a nonsuit.

Appellants base their claim for reversal upon the following points: That there is no evidence to support the finding that appellants were negligent; nor to support the finding that defendant-respondent Meek was not negligent; nor to support the finding that negligence of appellants, if any be shown, proximately contributed to plaintiffs' injuries; and that appellants' motion for nonsuit should have been granted.

The motion for nonsuit was properly denied under the rules governing such motions, too well known to herein require further statement. Suffice it to say that at the close

of plaintiffs' case there was presented a *prima facie* case of negligent operation of their automobile by appellants, as a result of which it collided with that of respondents Trowbridge and wife, who were at the time shown to be without fault, resulting directly in injuries to them and their property. At the time of collision, appellants were operating their automobile on its wrong side of the highway, meeting in a "head-on" collision with that of respondent Trowbridge and wife, which machine the evidence revealed was at the time being operated on its right side of the highway at a prudent and careful speed. This constitutes negligence of a *prima facie* character, sufficient in itself to overcome the motion for nonsuit. In *Lawrence* v. *Goodwill*, 44 Cal. App. 440, 449 [186 Pac. 781], it is stated: "In other words, the fact that the driver of a vehicle has taken the wrong side of the highway when meeting or overtaking another where damage occurs is not conclusive, but only *prima facie* evidence of negligence which may either stand as proof of the fact or be overcome or rebutted by the circumstances of the particular case." Herein such *prima facie* proof operated in law to cast the burden on appellants to explain that they drove their automobile to the wrong side of the highway without want of care. ■ This the appellants sought to explain by subsequent proofs, and now contend that the whole proofs, taken together, are insufficient to support the findings that they were negligent and that their cross-defendant Meek was not negligent.

In several of the material issues involved in this appeal there is a conflict of evidence, but in accordance with the well-established rule of law with respect to appeals based on insufficiency of evidence the following recitation of facts must be accepted as true, as they are supported by substantial evidence.

About 5 o'clock P. M. of June 24, 1930, on a bright, clear day, respondents Trowbridge and wife, the former driving, were traveling west or northwest on Roosevelt highway near Malibu Beach in Los Angeles County, in a Studebaker sedan automobile, and for two or three miles had been following a Sterling truck, 20 feet in length and of some 22,000 pounds weight with its load of sand and gravel, operated by respondent Meek, at a speed of about 30 miles an hour, and about 60 feet behind it. The highway at this

place consists of 20 feet of concrete pavement with 12-foot gravel shoulders on each side. Suddenly discovering that the truck was slowing down, Trowbridge also slowed down to 12 or 15 miles an hour, his machine approaching to within about 15 feet of the rear of the truck. At this point the truck made a left-hand turn to enter the premises of Marblehead Land Company through a gate, and when the truck had cleared the right or east half of the road, its rear being about the center line thereof, Trowbridge accelerated his speed to pass on, when he saw immediately in front of him—about 15 or 20 feet—the Packard automobile of appellants approaching the front of his machine at an angle of about 45 degrees to the center line of the road. He immediately applied his brakes and thereupon a collision occurred on the east half of the road. Both automobiles stopped at the point of collision, the Trowbridge car being on the east half of the highway and appellants' auto being at an angle across the east half, with the rear wheels about over the center line. In the meantime the truck, untouched, passed into and through the gate and stopped.

As the truck approached the point where the turn was made, respondent Meck reduced its previous speed of 25 or 30 miles an hour to 10 or 15 miles an hour, and at a distance of some 200 feet before turning he started giving a signal by extending his arm horizontally; and when, some 50 or 60 feet from the gate, he saw through his rear view mirror that the car behind him was not attempting to pass, with his arm signal still out he proceeded and made the left turn, just after awaiting the passing on his left of an automobile going south. At the time he began to make this turn he looked north and saw another automobile (appellants') about 250 feet away, approaching at a speed of about 40 miles an hour. He completed his left turn and had partly entered the gate when he heard the crash of the collision. Appellant Mrs. Briggs, who was operating the Packard, did not see any signal given by the truck driver and did not notice that the truck was turning until her automobile was within 30 or 40 feet of the truck. She immediately applied her brakes, which operated on the rear wheels only, and swerved to her left to avoid hitting the truck, which was at the moment across the west half of the highway, passed its rear end at a distance of about one foot and then col-

lided with the front end of the Trowbridge car. On the highway, after the collision, there were found two skid marks leading near to the Packard rear wheels, extending about 8 feet in a diagonal direction across the highway and beginning about a foot to the west of the center line of the highway.

There is not so much of conflict as there is of inconsistency in certain parts of the evidence. Thus, estimates of distance and speed by the several witnesses, where they differ only within reasonable limits, are proofs to be weighed by the trial court and the facts found in accordance with their convincing preponderance. Such findings the appellate court ordinarily will not disturb. Appellants specifically refer to the testimony of respondent Meek, in respect to the giving of the arm signal, and claims that it affirmatively shows that he gave the signal only during the last 35 feet before turning, which is less than the distance fixed by law. (Sec. 130, C. V. A.) In his examination he was asked: "How far from the gate were you when you gave it (the arm signal)?" To this he replied: "About 35 feet." He then demonstrated to the court the manner of giving the signal, and was then asked: "Did you put your arm out just as far as you could?" To this he answered: "Yes, sir", whereupon this question was put: "How far did you leave it out?" To this he answered: "About 200 feet, until I made my turn." The witness Zeran, who was traveling south on the highway at the time, testified that as he passed the truck some 50 feet south of the gate, just before it turned, he saw the arm signal being given by Meek and had continued to see it from a point about 18 feet north of the gate. The witness Wills, who was following and attempting to pass the Trowbridge automobile as well as the truck on their right or east side, using the graveled shoulder for passage, testified that he saw the truck driver give a signal that he was going to turn, while the witness was still behind the Trowbridge automobile. The witness Kimball testified that he was driving an automobile behind that of appellants and saw respondent Meek give the arm signal when the truck was 150 feet from the gate, and that Meek continued to give the signal until he turned. The witness McIntyre, who was riding with Meek, testified that he saw the latter give the signal "for a long ways" before turning.

From the foregoing it is quite clear that the trial court's implied finding that respondent Meek gave the arm signal for a distance of more than 50 feet last before making the turn is amply supported by the evidence.

■ Appellants also specifically attack the credibility of the testimony of the witness McIntyre in respect to his reading of the speedometer on the truck, and as a basis of such attack quotes from the testimony of respondent Meek, who testified in answer to a question as to how far he had driven this particular truck: "I don't know exactly. There is no speedometer on this truck to check the miles." It is a reasonable implication to be drawn from this answer that there was a speedometer on the truck but that it was not one that would register mileage. It is common knowledge that speedometers ordinarily register speed, total mileage and trip mileage. It cannot be concluded that the witness McIntyre was testifying falsely when he said he read the speed on the truck speedometer, simply because the respondent Meek stated there was no speedometer on the truck to check the miles.

From the foregoing statement of facts supported by substantial evidence, it is clear that the finding of negligence on the part of appellants, proximately contributing to the injuries of the respondents Trowbridge and wife, is supported by the evidence. ■ The sufficiency of evidence to establish a given fact is primarily a question for the trial court and the jury, and if there be substantial evidence to support the conclusion reached below, the finding is not open to review on appeal. The power of the appellate court begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached in the trial court. If on any material point the testimony is in conflict, it must be assumed that the conflict was resolved in favor of the prevailing party. (*Treadwell* v. *Nickel*, 194 Cal. 243, 260 [228 Pac. 25]; *Comstock* v. *Morse*, 107 Cal. App. 71 [290 Pac. 108].)

■ Under the same rule and for the same reasons it is likewise clear that there is substantial proof supporting the finding that respondent Meek was not negligent as charged in appellants' cross-complaint. Section 130 of the California Vehicle Act, as it existed at the time of the collision herein,

contained three constituent parts relevant to the facts of this case in respect to turning a vehicle on a public highway. First, the driver shall first see that such turning may be made in safety; second, if the operation of any other vehicle may be reasonably affected by such turning, the driver shall give a signal plainly visible to the driver of such other vehicle, by extending his hand and arm horizontally from and beyond the left side of the car, continuously during the last 50 feet traveled by the vehicle before turning; and third, if the vehicle is so constructed or carries a load in such manner as to prevent the hand and arm signal above specified from being visible both to front and rear of such vehicle, it shall be equipped with an approved mechanical or electrical device which shall be used to signal in place of the hand and arm. There is substantial evidence herein that Meek gave the hand and arm signal for more than 50 feet continuously before turning, that it was plainly visible to another driver in his rear and to other drivers to his front, both in front of and behind appellants' automobile. From which it follows that a mechanical or electrical device for signaling was unnecessary. As to whether he saw that the turning could be made with safety, the trial court, upon all the evidence, impliedly found that he did so see. The facts recited above, if believed by the trial judge, furnish ample support for the conclusion that one in the position of the truck driver, seeing what he saw, in the exercise of ordinary care would reasonably believe that a left turn could be made in safety.

In the case of *Inouye* v. *Gilboy Co.*, 115 Cal. App. 25 [300 Pac. 835], in construing section 130 of the California Vehicle Act the court says: "This section provides that before turning the driver 'shall see first that such movement can be made in safety, and if it cannot be made in safety, shall wait until it can be made in safety'. This section must be given a reasonable construction. 'Safety' does not mean absolute safety, for, under that construction, a driver intending to turn would be required to await the time when no other vehicle could possibly be affected in any way by such movement. The quoted portion of the section should be construed to require that the driver see first that the movement could be made in safety, assuming that both he and others using the highway exercise ordinary care."

■ Appellants invoke the doctrine of imminent peril as excusatory of their conduct in swerving to the wrong side of the road. This doctrine is not available to them, as it is never available to relieve one from the consequences of a vehicular collision unless he is himself otherwise without negligence. The rule is stated in the text in 19 California Jurisprudence, at page 598, as follows: "One who, without negligence on his part, is suddenly confronted with imminent danger or seeming imminent peril is not required to exercise that degree of care and skill which is required in the commission of an act after careful. deliberation." The case of *Dewees v. Kuntz,* 106 Cal. App. 665 [289 Pac. 912], cited by appellants, recognizes this rule. The rule as stated above is supported by numerous decisions of our appellate courts, one of the latest and most positive of which is *Miner* v. *Dabney-Johnson Oil Corp.,* 219 Cal. 580 [28 Pac. (2d) 23].

■ Appellants also invoke the doctrine of last clear chance, in their appeal against respondent Meek. Briefly stated, this doctrine is: "A party who has the last clear chance to avoid the accident, notwithstanding the previous negligence of a plaintiff, is solely responsible." (*Girdner* v. *Union Oil Co.,* 216 Cal. 197 [13 Pac. (2d) 915].) The same case defines the necessary elements of the doctrine as follows: "That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only when it is physically impossible for him to escape, but also cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure." Under the facts of this case this doctrine will not avail appellants anything, as the element of a clear opportunity for respondent Meek to avoid the impending accident is entirely absent. The situation of danger did not arise until the truck had turned across appellants' route, and there is no evidence to indicate that respondent Meek knew that appellants had not seen his signal and knew, or in the

exercise of ordinary care should have known, that appellants did not intend to slow down until too late. The findings of the trial court negative the application of the doctrine, and on the evidence in the record herein this court cannot say that, as a matter of law, respondent Meek was afforded a clear opportunity, by the exercise of the proper degree of care, to have avoided the collision. (*Lawrence* v. *Goodwill,* 44 Cal. App. 440, 450 [186 Pac. 781].)

The order denying the motion for new trial is not appealable and the appeal therefrom is dismissed.

The judgment is affirmed.

Craig, Acting P. J., and Desmond, J., concurred.