MORALES, DEMANDANTE Y APELADA, *v.* CENTRAL VANNINA,
DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Distrito Primero, en pleito sobre daños y perjuicios.

No. 2753.—Resuelto en julio 12, 1923.

DAÑOS Y PERJUICIOS — NEGLIGENCIA CRASA DE COMPAÑÍAS FERROCARRILERAS —
PASOS A NIVEL—BARRERAS EN PASOS A NIVEL.—La omisión por parte de los
agentes de una compañía ferrocarrilera, de operar oportunamente las barre-
ras a que se refiere el artículo 12 de la ley de marzo 9, 1911, en el momento
de acercarse un tren y de hacer el cruce en un paso a nivel, equivale a la
falta de barreras y tal omisión unida al hecho de entrar al cruce yendo de
espaldas la locomotora constituye negligencia crasa.

ID.—ID.—"MIRAR Y OIR."—Cuando las barreras en un paso de ferrocarril están
como regla general cerradas al aproximarse los trenes, el hecho de estar
abiertas dispensa de la obligación usual de mirar y oir.

ID.—ID.—DILIGENCIA "DE UN BUEN PADRE DE FAMILIA"—PRUEBA DE DILIGEN-
CIA.—Para probar que empleó la diligencia a que se refiere el artículo 1804
del Código Civil, la demandada presentó en este caso prueba testifical ten-
dente a demostrar la competencia de sus empleados y la forma en que se
daban las órdenes para operar las barreras. *Se resolvió:* que una prepon-
derancia de la evidencia demostró que las barreras no se bajaron en el mo-
mento preciso que debió hacerse para anunciar el. peligro y evitar el acci-
dente, y si la falta consistió en algún defecto en el mecanismo para su
pronto y rápido manejo, tampoco se demostró que se ejercitara en cambio
las precauciones que en tal momento exigiría el menos diligente padre de
familia puesto que por el contrario, el hecho de caminar hacia atrás la loco-
motora y ocurrir el accidente en tales condiciones, demostró negligencia en
grado máximo.

ID.—ID.—CUANTÍA DE LOS DAÑOS.—Se resolvió en este caso: que atendidas las
lesiones que se describen en la opinión, y las angustias morales y sufrimientos
físicos causados a la demandante por la negligencia de la demandada, una
sentencia por $1,000 es razonable.

Los hechos están expresados en la opinión.

Abogado de la apelante: Sr. D. *Monserrat.*

Abogados de la apelada: Sres. *F. González* y *C. Iriarte
Jr.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión
del tribunal.

En el trayecto de la carretera central que de Río Piedras
conduce a Caguas ocurrió un choque entre un automóvil des-
tinado al servicio público y una locomotora, esta última pro-

piedad de la demandada, ocasionando a la demandante varias lesiones, y lo que dió lugar a la iniciación de este pleito, en reclamación de daños y perjuicios.

En apoyo de su demanda, la demandante alegó que la demandada tiene un ferrocarril que cruza la carretera central entre Río Piedras y Caguas y que para proteger a los viandantes ha establecido un servicio de barreras en el paso que la vía férrea atraviesa dicha carretera; que el 19 de febrero de 1920 la demandante viajaba en un automóvil de servicio público, propiedad de Gerardo M. García, guiado por él mismo, y al cruzar la vía férrea en el paso a nivel, una locomotora de la demandada sin que diera señal o aviso alguno o bajaran las barreras, chocó con el automóvil en que viajaba la demandante, recibiendo, a consecuencia del choque, las siguientes lesiones: contusión con rasguño y escoriaciones en la región infra-maxilar derecha e izquierda; contusión con equimosis en el tercio medio superior de la cresta de la tibia en la pierna izquierda; contusión, también con equimosis y rasguño en la región rotuliana de la rodilla derecha, y fuerte contusión extensa en la parte anterior e inferior del muslo derecho; que la demandante estuvo recluída en cama por un período de ocho días sufriendo dolores agudos y angustias mentales; y por último, que dicho accidente se debió única y exclusivamente a la negligencia y falta de cuidado de la corporación demandada por no tocar campana ni pito o bajar las barreras dando así aviso de la proximidad del tren.

La demandada contestó la demanda admitiendo ciertos hechos, negando otros y alegando como materia nueva: (*a*) la falta de causa de acción; (*b*) atribuir el choque única y exclusivamente a la propia culpa y negligencia de la demandante al permitir al chófer que guiaba el automóvil corriera a una velocidad excesiva al acercarse al sitio de la colisión, no deteniéndose para ver y oir la proximidad de la locomotora que se acercaba al lugar del cruce tocando su campana

de aviso y no atender a las visibles señales que hacía el guardabarrera a la demandante con una bandera roja, y no ordenar al chófer que redujera la marcha del automóvil al ver que las barreras estaban puestas y pasara por debajo de las mismas; (*c*) haber ocurrido el accidente sin mediar culpa o negligencia de la demandada ni de sus directores por haber empleado toda la debida diligencia de un buen padre de familia para prevenirlo.

Celebrado el juicio, se practicó una abundante prueba por una y otra parte, y la corte inferior dictó sentencia concediendo a la demandante una indemnización de $1,000 por razón de daños y perjuicios. No conforme con la sentencia, la demandada ha elevado este recurso y sostiene que, dicha corte inferior erró al no declarar: 1°., que el hecho de no detenerse el automóvil para mirar y oir constituye negligencia contributoria; 2°., que la negligencia contributoria de la demandante fué la causa próxima del accidente; y 3°., no aplicarse en toda su extensión el artículo 1804 del Código Civil revisado y haberse concedido una indemnización pecuniaria excesiva e inmoderadamente inadecuada.

En su opinión la corte inferior, después de referirse a las alegaciones de la demandante y demandada, dice lo siguiente:

"Que en la tarde del día 19 de febrero de 1920, salió de San Juan y en dirección a Yabucoa, pasando por Río Piedras, el auto de la propiedad de Gerardo M. García y conducido por él mismo, llevando pasajeros, entre otros al demandante Dr. José Eulogio Berríos; que al salir de Río Piedras y en dirección a la Central Vannina, la velocidad del auto no era excesiva, que no viendo el conductor o chauffeur puestas las barreras que interceptan el tráfico por la carretera en los momentos en que pasa por la vía que la cruza algún tren o máquina, y en la convicción de que no había peligro siguió su marcha, y al llegar cerca de la vía, cruzó la carretera una locomotora, sin que hubiese tocado el pito, campana o hecho alguna señal de alarma que hubiere servido de aviso al chauffeur del auto, lo que ocurrió en momentos en que el auto se

encontraba tan cerca de la vía que le era imposible detenerse, siendo alcanzado por la máquina que andaba para atrás, destrozando el auto y causándole al demandante contusiones y heridas que le privaron dedicarse a sus labores profesionales, durante unas tres semanas, sufriendo dolores y angustias mentales.

"Es indudable que si la demandada hubiera bajado las barreras, para dar paso a la máquina e impedir que en esos momentos cruzaran por la vía los autos que trafican por la carretera, el accidente no hubiera podido ocurrir, pues se hubiera dado cuenta el chaüffeur y alguno de los pasajeros por lo menos, y en todo caso el auto hubiera chocado con la barrera y hubiera quedado detenido.

"Este es uno de los casos en que la corte ha podido apreciar con más claridad la negligencia de la demandada.

"La corte ha llegado al conocimiento, por la declaración de los testigos, que después de ocurrido el accidente, la demandada, para demostrar su negligencia, intentó bajar la barrera.

"La teoría que sostiene la demandada de que las barreras estaban puestas y la de que el auto abandonando su derecha cogió la izquierda para pasar por debajo de la. barrera, e inmediatamente cogió la derecha para pasar por delante de la máquina, queda desvirtuada, aparte de estarlo por la prueba testifical, con la simple inspección ocular, pues dada la distancia que media entre la barrera y la vía, tal maniobra es imposible."

Según podemos ver, la corte inferior llegó a la firme conclusión de que el accidente se debió única y exclusivamente a que la demandada, manteniendo como mantenía un sistema de barreras en el paso a nivel, no bajó dichas barreras en señal de aviso en los momentos en que una de sus locomotoras entraba de espalda en el cruce y en los que, a la sazón, el automóvil en que viajaba la demandante atravesaba dicho cruce, produciéndose el accidente por la imprevisión y culpa de la demandada. A esta conclusión se llegó, después de una extensa prueba aportada por ambas partes, y siendo así lo resuelto un conflicto de evidencia el que fué dirimido por el juez sentenciador, solamente pasamos a considerar si los errores de apreciación que se atribuyen a la corte inferior son manifiestos o fueron realmente cometidos.

Sin embargo, hay un punto legal derivado de los hechos, el que discute el apelante como cuestión esencial en este recurso. En tal sentido el apelante sostiene que el accidente se debió a que la demandante, al acercarse al cruce, no tuvo el cuidado, como regla o medida de precaución legal, de "parar", "ver" y "oir", y alega que esto no fué tomado en consideración por la corte inferior, porque de otro modo la demandante hubiera evitado el accidente. Nos parece que la jurisprudencia en general es bien clara y precisa en casos como el presente. Cuando un ferrocarril cruza un camino público, está obligado a tomar, para la seguridad de los viajeros, tales precauciones razonables como lo exigiría la prudencia ordinaria. Se distingue cuando la materia está regulada o no por estatuto. En el primer caso, no hay dificultad en determinar si la compañía ha cumplido sus deberes con el público, y en el segundo caso, o sea, cuando el estatuto no prescribe de qué modo debe ser dado el aviso necesario para cuando un tren se acerca a un cruce, la cuestión relativa a negligencia en caso de accidente se regula entonces por las circunstancias especiales de cada caso. Tomo 22 R. C. L., pág. 988.

No estamos en esta segunda situación. El punto en cuestión está regulado en Puerto Rico por un estatuto que impone a las compañías de ferrocarriles mantener un sistema de barreras en aquellos sitios en que sus vías cruzan las carreteras públicas. La ley referente a la reglamentación de transporte por ferrocarril, aprobada en marzo 9, 1911, prescribe en su sección 12 lo siguiente:

"Art. 12.—Toda compañía de ferrocarril de servicio público queda por la presente obligada a establecer y conservar cadenas, barreras y otros medios adecuados de protección, en todos los cruces de las carreteras públicas insulares, y demás cruces públicos que el Consejo Ejecutivo designare." * * *

Más luego nuestra legislatura pasó la Ley No. 70 definiendo las compañías de servicio público, etc., aprobada en

diciembre 6 de 1917, y en el artículo 3,. letra *"q"*, bajo el epígrafe "Aparatos de seguridad en cruces, etc.," se repite la misma prescripción del artículo 12 de la ley de 1911, *supra,* y se dice:

. ·"Si se tratare de una compañía de ferrocarril, ésta deberá construir y conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas insulares y en los demás cruces públicos que la Comisión designare y, con ·sujeción a las reglas, reglamentos y órdenes de la Comisión, deberá cercar o de otra manera adecuada guardar o proteger sus vías, en aquellos sitios que la Comisión designare, de modo que los animales no puedan entrar en ella; deberá instalar en sus locomotoras campanas y silbatos que deberán usarse al acercarse a curvas, túneles y a los cruces de caminos o calles y siempre que fuere necesario como advertencia de la aproximación de dichas locomotoras y trenes los que reducirán la velocidad al mínimum en los cruces de calles; y deberá usar, después de la puesta del sol, las luces que sean necesarias y que la Comisión determine." Leyes de 1917, volumen II, pág. 449.

La ley misma exige mantener un sistema de barreras en el sitio donde ocurrió el accidente de este caso. Esto constituye un aviso estatutorio para evitar el peligro al público que transita por tales sitios y por consiguiente la falta de ser operadas oportunamente las barreras en el momento de acercarse un tren y de hacer el cruce equivale a. la falta de barreras y tal omisión constituye negligencia.

Bajo este aspecto, ya esta Corte Suprema, en el caso de *Domínguez* v. *Porto Rico Railway, Light & Power Co.,* por voz del Juez Aldrey, había hecho la debida aplicación del artículo 12, *supra,* y refiriéndose al sistema de barreras que debe ser mantenido en los cruces de las carreteras insulares, se dice lo siguiente:

"La barrera y la cadena son los medios que se utilizan para cerrar e impedir el paso por algún sitio y cuando se emplean en un cruce o paso a nivel de un ferrocarril, producen el resultado de cerrar y obstaculizar el ,paso por la vía. ·Colocada la barrera

o la cadena, es materialmente imposible transitar por el cruce a menos que sea rota o se salte y por consiguiente es un medio de tal naturaleza, que una vez colocado oportunamente impide los accidentes y colisiones, que es el fin perseguido por la ley al ordenar su colocación. Según se dice en el caso de *Chicago and Alton R. R. Co.* v. *Wise*, 206 Ill. 453, 69 N. E. 500, confirmado en 106 Ill. App., 174, las barreras requeridas por el estatuto tienen el objeto no sólo de servir de aviso sino también son un medio de obstrucción material." 19 D. P. R. 1095.

"Una compañía de ferrocarril no está legalmente obligada a suministrar y mantener portones en los cruces de las calles y de la carretera en toda su línea a menos que así se lo exija el estatuto o alguna ordenanza, o a no ser que resulte que el cruce en particular es públicamente peligroso. Pero cuando existe un estatuto u ordenanza válido que exige que se pongan portones, el no cumplir con los mismos constituye negligencia." 22 R. C. L., pág. 1006.

Aparece de las conclusiones de la corte inferior que las barreras establecidas por la demandada no habían sido bajadas en señal de aviso para haber evitado el accidente. Nada encontramos en la prueba que pueda destruir la apreciación que tuvo la corte inferior en ese extremo y por el contrario todo indica que hizo una positiva apreciación de los hechos. Si a esto se añade la oportunidad que tuvo el juez inferior de ver el sitio del suceso y comprobar el modo de operar las barreras, destruyéndose toda posibilidad de que el automóvil pudiera pasar por debajo de las mismas, como se ha intentado probar por la demandada, esa es una circunstancia que entraña una convicción más firme para el juez inferior, y para nosotros un motivo para no intervenir en la apreciación de hechos que solamente pudo aquilatar en su verdadero valor el juez sentenciador, encontrándose, por tanto, en mejores condiciones que nosotros para apreciar sus circunstancias.

Es cierto que el apelante cita en su apoyo el caso de *Domínguez* v. *Porto Rico Railway, Light & Power Co.* citado, intentando demostrar que el chófer estaba obligado a dete-

ner su automóvil para ver y oir, pero siendo las circuns-
tancias distintas en este caso, no tiene aplicación la conclu-
sión del apelante. En aquel caso no había barreras, lo que le
constaba al chófer, pero en este caso ocurría todo lo contrario
y no cabía aplicar tan fuertemente la regla general de "ver
y oír," ya que el chófer estaba dispensado de la usual obliga-
ción de aquella regla por la invitación implícita que era de
presumir que produjera en su mente el hecho de estar le-
vantadas las barreras.

"Así cuando las barreras en un paso de ferrocarril están como
regla general cerradas al aproximarse los trenes, el hecho de estar
abiertas dispensa de la obligación usual de mirar y oír."
1 *Shearman & Redfield's Law of Negligence*, 135.

Además, la corte inferior partió de la base que tal de-
ber fué cumplido y habiendo resuelto el conflicto de la prueba
en tal sentido en favor de la demandante, no estamos en
condiciones de intervenir teniendo en cuenta las demás cir-
cunstancias especiales que concurren en el presente caso.

No aparece tampoco que la falta de haber operado debida-
mente la demandada las barreras, que por sí solas hubie-
ran evitado el accidente, dicha demandada tomara otras pre-
cauciones para evitarlo, y sobre todo en condiciones en que
el accidente ocurrió entrando de espaldas la locomotora en
el cruce. Este fué otro incidente en el presente caso. Ello
requería la adopción de medidas de precaución aún más ex-
tremas para avisar la aproximación de la locomotora en ra-
zón de que entraba de espaldas en el cruce.

"Esta regla que exige el adoptar medios extraordinarios para
avisar la aproximación de los trenes en cruces que son peculiar-
mente peligrosos, también tiene frecuente explicación en casos en
que trenes o locomotoras han sido puestos en movimiento hacia
atrás por cruces. Así, pues, una compañía de ferrocarriles ha sido
declarada responsable de abierta negligencia al retroceder un tren
a través de un cruce muy frecuentado sin llevar en la parte de
atrás un guardafrenos como vigilante y dispuesto, en caso de pe-

ligro, a hacer uso de los frenos y evitar de este modo una colisión
o accidente.''   22 R. C. L. págs. 990–91.

Si unimos la anterior circunstancia a las ya examinadas
en este caso, tenemos que concluir que sobre la demandada
recae todo el peso de una crasa negligencia en relación con
la seguridad a que tenía derecho exigir la demandante al
cruzar dicha demandada con sus trenes o locomotoras un
camino público.

Además, para hacer más clara la situación de este caso
y no dejar dudas ni excusas para las demás señales que el
apelante intenta que se hicieron por el guardabarrera, la
opinión de esta Corte Suprema en el caso de *Domínguez* v.
*Porto Rico Railway, Light & Power Co., supra,* es termi-
nante, y dice, además:

''Aplicando estos principios al caso presente, debemos llegar a
la conclusión de que una persona empleada como guardabarrera
por la corporación demandada para dar aviso con una bandera a
los transeuntes de la aproximación de un tren, no es un medio
adecuado de protección similar o análogo a la barrera o cadena
exigida por la ley, ya que no produce el efecto de obstaculizar ni
impedir materialmente la entrada en la vía. Así, pues, la cor-
poración demandada en la fecha en que ocurrió el accidente no
había cumplido con el deber que le impuso la ley de colocar en ese
sitio, barreras, cadenas o cualquier otro aparato análogo a ellas
para protección de los transeuntes, lo que constituye una negli-
gencia *per se* por haber dejado de cumplir con ese precepto estatu-
torio.   33 Cyc. 968, y casos citados en la nota No. 8.''   19 D. P.
R. págs. 1095–96.

Se insiste por el apelante en la participación que tuvo el
chófer como causante del accidente y alega que el haber
empleado media hora de San Juan a Río Piedras implica
que caminaba a una velocidad de más de 40 millas.   La dis-
tancia que media entre las dos poblaciones y que es de 8
millas, destruye por sí misma la exagerada argumentación
del apelante en ese extremo.   Aparte de esto y partiendo

del punto de que en este caso la causa próxima del accidente fué la falta de operar las barreras para cerrar el paso, lo que por sí solo hubiera evitado todo peligro, la velocidad del automóvil sería un dato que tendría importancia si se hubiera demostrado que se trataba de una velocidad inusitada y que la demandada hizo algún esfuerzo de su parte, ya que de modo claro había faltado a un deber estatutorio no bajando las barreras, de que por otros medios o señales hubiera intentado avisar el peligro; pero no encontramos dato alguno en que apoyarnos para que pudiéramos estar autorizados a sostener una conclusión que tal vez implicaría negligencia contributoria por parte del chófer que conducía el automóvil. Pero si asumiéramos solamente a los efectos de la argumentación, que el chauffeur hubiera sido negligente en alguna forma, su negligencia no podía ser imputable en este caso a la demandante, quien solamente da instrucciones al chófer para conducirla al sitio de su residencia en Yabucoa, sin que además apareciera por prueba directa o circunstancia alguna que ella tuviera o ejerciera autoridad o control sobre el chófer.

Esta misma cuestión también fué considerada en el caso de *Domínguez* v. *Porto Rico Railway, Light & Power Co., supra,* y sosteniéndose allí en el mismo punto de vista, se dijo por esta corte:

"Mientras la regla general establecida por las decisiones en Inglaterra fué que la negligencia del conductor sería imputada a un pasajero en accidentes causados por la negligencia de un tercero a la cual contribuyó el conductor, y que esta doctrina fué adoptada por unas pocas decisiones inglesas y americanas, sin embargo, tales decisiones han sido expresamente rechazadas luego en Inglaterra y desaprobadas por la Corte Suprema de los Estados Unidos en el caso de *Little* v. *Hackett*, 116 U. S. 366; 6 Sup. Ct. 391; 29 L. ed. 652, siendo hoy la regla general, que la negligencia del conductor no será imputada al pasajero cuando no tenía gobierno sobre dicho conductor." 19 D. P. R. 1097.

"En algunos estados prevalece la doctrina de que la negligencia contributoria del conductor de un vehículo privado se imputa a una persona que voluntariamente va con él, pero la regla general es que la negligencia del conductor de un vehículo no ha de imputarse a uno que va en dicho vehículo y que recibe un daño en un cruce debido a la negligencia contributoria del conductor y de la compañía de ferrocarriles cuando tal persona no tiene culpa ni control sobre el conductor del vehículo. Y la ley casi universalmente reconocida ahora es que cuando una persona acepta una invitación para correr en un vehículo de otro, sin autoridad o propósito alguno de dirigir o controlar al conductor, o los movimientos del vehículo, y sin tener ninguna razón para dudar de la competencia del conductor, la negligencia contributoria del dueño o conductor del vehículo no se imputará al huésped o pasajero, del tal modo que le impida hacer uso del derecho a recobrar daños y perjuicios de una compañía de ferrocarriles cuya negligencia le ocasiona un daño en un cruce cuando él corre en tales condiciones. Esa regla ha sido aplicada en un número de casos en los cuales está envuelta la relación correspondiente entre el chófer de un automóvil y una persona que va con él, sin tener control alguno sobre dicho chófer. La regla no se limita a los casos de transporte gratuito, sino que ha sido aplicada cuando se alquila un vehículo y el pasajero no ejerce ningún control sobre el chauffeur, que no sea el de dirigirle al sitio adonde desea que lo lleven y no existe ninguna distinción entre vehículos particulares y públicos, tales como tranvías y ómnibus." 22 R. C. 1, págs. 1047–48.

Se señalan además como errores la no aplicación en toda su extensión del artículo 1804 del Código Civil, y la concesión en último término de una indemnización excesiva e inmoderada.

El último extremo del artículo 1804, *supra*, dispone que la responsabilidad de que trata dicho artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño. La demandada presentó al efecto prueba testifical tendente a demostrar la competencia de sus empleados y la forma en que se daban las órdenes para operar las barre-

ras, pero una preponderancia de la evidencia demostró en este caso que las barreras no se bajaron en el momento preciso que debió hacerse para anunciar el peligro y evitar el accidente, y si la falta consistió en algún defecto en el mecanismo para su pronto y rápido manejo, tampoco se demostró que se ejercitara en cambio las precauciones que en tal momento exigiría el menos diligente padre de familia puesto que por el contrario, el hecho de caminar hacia atrás la locomotora y ocurrir el accidente en tales condiciones, demostró más que una simple negligencia, la que si fuéramos a calificarla por grados podría tal vez decirse que se produjo en su grado máximo.

En cuanto a los daños y perjuicios sufridos por la demandante, resultó probado que recibió por consecuencia del choque varias lesiones que exigieron la asistencia médica y su reclusión en cama por varios días. Lo primero implica un gasto además del correspondiente empleo de medicinas; y lo segundo una pérdida de tiempo que tiene su equivalencia en dinero. Además, en un accidente de la clase que nos ocupa, generalmente se sufren súbitas conmociones nerviosas cuyos resultados a veces nadie puede determinar para el futuro. Por tal razón, las angustias morales y los sufrimientos físicos son elementos que la jurisprudencia de un modo constante ha reconocido y le ha dado un valor positivo para fijar el montante de una indemnización en casos como el presente. De todos modos, hemos llegado a la conclusión de que la compensación de $1,000 que concedió la corte inferior a la demandante es una suma razonable y adecuada, atendidas todas las circunstancias del caso.

Por las razones expuestas debe confirmarse la sentencia de la corte inferior.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Hutchison.