GREGORIO MELÉNDEZ, menor de edad, representado por su
padre con patria potestad, Domingo Meléndez, deman-
dante y apelado, *v.* ABELARDO ALVAREZ, demandado y ape-
lante.

No. 3728.—*Visto:* Enero 21, 1926. *Resuelto:* Abril 27, 1926.

1. NEGLIGENCIA—ACTOS U OMISIONES CONSTITUTIVOS DE NEGLIGENCIA—CONDUCTA
PERSONAL EN GENERAL—PERSONAS EN SITUACIÓN DE INMINENTE PELIGRO—
GRADO DE CUIDADO EXIGÍDOLE.—Una persona que se confronta con una situa-
ción de peligro que surge repentinamente y en la cual una actuación inme-
diata es necesaria para evitarlo, no se requiere que ejercite aquella presencia
de ánimo y diligencia que justamente se requieren de un hombre cuidadoso
y prudente bajo circunstancias ordinarias.

2. CARRETERAS (*Highways*)—REGLAMENTACIÓN Y USO PARA EL TRÁNSITO—USO DE
LA CARRETERA Y LEY DEL CAMINO (*Law of the Road*)—CRUCE DE VEHÍCULOS
QUE MARCHAN EN DIRECCIÓN OPUESTA—AVISO.—Cuando dos vehículos mar-
chan en dirección opuesta, huelga la precaución de aviso prescrito en el apar-
tado (*e*), artículo 12 de la Ley No. 75 de 1916 (p. 152) al hacerse el cruce.

3. CARRETERAS—REGLAMENTACIÓN Y USO PARA EL TRÁNSITO—USO DE LA CARRE-
TERA Y LEY DEL CAMINO—CUIDADO REQUERIDO DE AQUELLOS QUE LA USAN—
APROXIMACIÓN A CRUCES DE FERROCARRILES—DEBER DE PARAR, MIRAR Y OIR—
CASO EN QUE LAS BARRERAS ESTÉN LEVANTADAS.—Cuando nada indica que
un demandado caminaba en su auto a una velocidad en exceso de la permi-
tida por ley, el cruce de una vía férrea donde existen barreras no impone a
aquél tan fuerte el deber de detener su marcha cuando las barreras están
levantadas (*Morales* v. *Central Vannina*, 32: 210, seguido).

4. CARRETERAS—REGLAMENTACIÓN Y USO PARA EL TRÁFICO—USO DE LA CARRETERA
Y LEY DEL CAMINO—CUIDADO REQUERIDO DE AQUELLOS QUE LA USAN—PER-
SONAS PARADAS EN LUGAR SEGURO DE LA CARRETERA.—El conductor de un
vehículo de motor tiene derecho a asumir que una persona parada en un
lugar seguro no dejará repentinamente aquella posición colocándose en el
paso del vehículo.

5. NEGLIGENCIA—CAUSA PRÓXIMA DEL DAÑO—ACCIDENTE CASUAL.—Analizada la
prueba en el caso de autos se resolvió el suceso fué el resultado de un acci-
dente casual.

6. NEGLIGENCIA—ACTOS U OMISIONES CONSTITUTIVOS DE NEGLIGENCIA—MATERIAS
O SUSTANCIAS PELIGROSAS, MAQUINARIAS Y OTROS MEDIOS—CARROS DEDICA-
DOS A USO PARTICULAR—DEBER RESPECTO A VELOCIDAD Y CONTROL DEL CA-
RRO.—La regla que impone a todo conductor o *chauffeur* el deber de man-
tener suficientemente despacio la velocidad de modo que pueda controlar y
detener un carro, no tiene aplicación cuando se trata de situaciones de ver-
dadera emergencia en que no hay razón para esperar que súbitamente uno
se confronte con ellas.

SENTENCIA de *M. Rodríguez Serra,* J. (Segundo Distrito, San Juan),
declarando con lugar la demanda, con costas. *Revocada, sin
costas.*

*Salvador Suau* y *Fernando B. Fornaris,* abogados del apelante; *Mariano Acosta Velarde,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Abelardo Alvarez guiaba un automóvil marca ''Essex,'' de su propiedad, por la carretera que conduce de Bayamón a San Juan y poco después del sitio en que está interceptada por la vía férrea de la American Railroad Co. of Porto Rico, arrolló a un niño de nueve años, produciéndose entre otras lesiones, la rotura del fémur de la pierna derecha, por su tercio inferior. En la demanda reclamando daños y perjuicios por $10,000 alegó que el daño causado al demandante se debió única y exclusivamente a la negligencia del demandado. No se describen los actos específicos en que consistió la causa próxima del accidente. En el desarrollo de la prueba es que el demandante intentó demostrar que tal causa se debió a la velocidad excesiva que caminaba el demandado y no haberse dado aviso de la proximidad del vehículo cuando se acercaba al lugar en donde, según alega el demandante, estaba el niño, teniendo de la mano a su hermanita de dos años. La teoría, por consiguiente, que presenta el demandante es que el niño lesionado estaba parado a la derecha del camino, en dirección a San Juan, junto al poste del que pende una de las cadenas que sirven de barreras en el paso a nivel de la vía férrea cuando allí fué alcanzado por el demandado.

En oposición, sostiene el demandado que él marchaba a una velocidad moderada, la que redujo al acercarse a la vía férrea donde se enfrentó y cruzó con dos automóviles, seguido uno del otro, y que ya pasada la vía y al momento de cruzar con el segundo automóvil, salió el niño súbitamente y corriendo detrás del último vehículo, llevando en hombros a la niña de dos años, y poniéndose frente al automóvil en su carrera, fué alcanzado por el *bumper* del carro, a pesar de haber hecho todo lo humanamente posible para evitar el accidente.

La corte inferior concedió al demandante una indemnización de $4,000, y sus conclusiones para sostener la sentencia, dicen como sigue:

"Considerada la prueba en conjunto, la Corte llega a la conclusion de que el accidente pudo haber sido ·evitado si el demandado hubiera en el acto de notar la presencia de los niños, tomado las precauciones adecuadas para evitar el choque. Si el niño surgió del lado izquierdo de la carretera (con relación al demandado) después de cruzar éste con el último de los automóviles que marchaban en opuesta dirección, es obvio que el demandado tenía la carretera libre para girar hacia la izquierda con rapidez y evitar la colisión con el niño en la proximidad de la cuneta derecha. Por otra parte, el demandado al acercarse a los vehículos citados, no avisó de su proximidad, y si lo hubiese hecho tocando klaxon o bocina el niño hubiera dirigido probablemente su atención hacia el lado de donde caminaba el demandado, antes de decidirse a cruzar la carretera. Era el deber del demandado en aquel sitio no sólo dar aviso de su acercamiento sí que también de reducir su velocidad, pues se ha probado que allí la carretera de Bayamón a San Juan está cruzada por la vía férrea de la American Railroad Co., y se une a la que conduce a Cataño. Ambas precauciones pudieran haber evitado el suceso. El demandado podía ver claramente sin obstáculos cuanto había a su frente desde una distancia de 300 a 400 metros antes de llegar al sitio del suceso, puesto que la carretera es recta allí; y, habría podido notar de haberse fijado con la debida atención, antes de cruzar con los automóbiles, la presencia de los dos niños, que necesariamente se encontraban muy próximos al borde izquierdo de la carretera."

[1] La suposición que hace el juez inferior de que, según la teoría del apelante, éste hubiera podido evitar la colisión con el niño con sólo girar a la izquierda, es una hipótesis equivocada del deber que la ley y la jurisprudencia pueden imaginar en tales casos. Lo mismo podíamos decir de los deberes que parece imponérsele al demandado de que si hubiera tomado las precauciones adecuadas en el acto de ver a los niños, se hubiera evitado el choque.

Como la situación que se supone es un caso de emergencia, la regla judicialmente expresada es de que una persona actuando en tal circunstancia "no puede considerarse res-

ponsable por la falta de ejercer el mejor juicio que podía resultar de una deliberación, puesto que esa regla es aplicable con referencia a la persona que actúa y la persona por cuya falta se ve obligada a actuar sin tener tiempo para pensar. 20 R.C.L. 30." *De Jesús* v. *Ayende*, 32 D. P.R. 444.

"La experiencia ordinaria nos dice que a menudo ocurren casos en los cuales se presentan circunstancias de inminente riesgo o peligro tan repentina e inesperadamente a personas que por lo general son de temperamento y juicio frío y sereno que por el momento pierden su presencia de ánimo, o se encuentran de tal modo en una situación en la que se ven obligadas a decidirse a adoptar el medio mejor o más seguro para evitar el desastre que tales circunstancias amenazan en relación a la forma repentina en que ocurren . . . .; y las cortes han resuelto uniformemente que en tales casos, en los que el daño o lesión ha sido consecuencia directa de formar un juicio erróneo al tratar de afrontar o vencer el peligro de tales circunstancias, la parte con cuyo acto ha causado así el daño no será considerada civilmente responsable por cualquier daño o lesión de tal modo causado." *Lawrence* v. *Goodwill*, 186 Pac. 781 (44 Cal. App. 440).

[2] Otra precaución o deber de que habla la corte inferior se refiere al hecho de que el demandado no avisó su proximidad tocando klaxon o bocina a los dos vehículos que venían en opuesta dirección. El apelado alega que ese deber está prescrito en el apartado (*e*) del artículo 12 de la Ley No. 75 para reglamentar el uso de vehículos de motor, etc., aprobada en abril 13, 1916, que dice:

"(*e*) Cuando se dé alcance a otro vehículo o persona siempre deberá darse aviso, y la persona o vehículo de menor velocidad deberá echarse hacia la derecha, tanto como le fuere posible, y el vehículo que dé alcance pasará siempre por su izquierda."

Parece claro que el estatuto se refiere a vehículos y personas que van en la misma dirección. Lógicamente, el que marcha adelante no tiene a la vista a quien viene detrás y si éste quiere dar alcance y pasar al que va adelante, la ley

le obliga a dar aviso, tratando así de evitar las posibilidades de un accidente, siendo éste el único fin de la ley.

En direcciones opuestas los vehículos se ven y huelga la precaución del aviso al hacerse el cruce.

[3] De igual modo, no indicándose en la opinión de la corte que el demandado caminaba a una velocidad en exceso a la permitida por el estatuto, no vemos que el cruce de la vía férrea en donde existe el sistema de barreras para interceptar el paso, le impusiera tan fuertemente el deber al demandado de detener su marcha, como sostiene el apelado, ya que él estaba dispensado de la usual obligación de ''ver y oir'' por ''la invitación implícita que era de presumir que produjera en su mente el hecho de estar levantadas las barreras.'' *Morales* v. *Central Vannina,* 32 D.P.R. 210.

[4] La corte inferior finalmente afirma que el demandado había podido notar, de haberse fijado con la debida atención, antes de cruzar con los dos automóviles que marchaban en dirección contraria, la presencia de los niños, que necesariamente se encontraban muy próximos al borde izquierdo de la carretera, sitio opuesto donde ocurrió el accidente.

Esta es otra de las suposiciones de la corte, que aceptándola como cierta a los fines de esta opinión, no envuelve para el demandado descuido o negligencia que le haga responsable de las consecuencias del accidente. La presunción racional y lógica en contrario a lo sentado por el juez inferior es la que establece la jurisprudencia, diciendo que el conductor de un vehículo de motor tiene el derecho a asumir que una persona parada en un lugar seguro no dejará repentinamente aquella posición, colocándose en el paso del vehículo. Y por el contrario tiene el derecho de asumir que así no ha de actuar. 3 Cal. Jur. 872.

[5] Un análisis de la prueba, por otra parte, nos lleva a la conclusión de que el suceso fué el resultado de un accidente desgraciado, ocurriendo según la relación o teoría del apelante. El niño atravesó corriendo e inesperada-

mente la carretera en momentos que el demandado cruzaba con el segundo de los automóviles que venían en dirección contraria. El niño demostró ser inteligente, pues parecía dar'se cuenta de la importancia de su declaración. No era lo mismo que el accidente ocurriera estando él parado a la orilla de la carretera o que tuviera lugar mientras corría y atravesaba el camino. Por más que trató de sostener insistentemente que fué cogido en la orilla derecha de la carretera, en dirección a San Juan, él al fin no pudo sustraer su tierna conciencia a la verdad de las cosas, pues del interrogatorio de repreguntas aparece lo siguiente:

"P.—¿Cómo, entonces te cogió? R.—Después. Yo pasé ligero, pero no me cogió en el medio de la carretera, me cogió allá, en la orilla. P.—¿Pasaste ligero? R.—Sí, señor. P.—¿Te cogió cuando pasabas ligero, en la orilla de la banda de allá? R.—Sí, señor."

Luis A. Deliz, ingeniero de la American Railroad Co. of Porto Rico, se limita a decir que la compañía tiene establecido un paso a nivel con un sistema de barreras junto al sitio en que ocurrió el accidente. El describe la topografía del terreno y dice que viniendo de Bayamón existe una recta de unos 300 ó 400 metros antes de llegar al paso a nivel.

Domingo Meléndez, padre del niño, trabaja en el ferrocarril y no vió cuando el automóvil alcanzó al niño; se encontraba como a diez o doce metros achicando una vaca. Vino en conocimiento por el grito del niño.

Emilio Jiménez venía en su automóvil de Bayamón a San Juan. No presenció los hechos en sí del accidente, y dice: "Lo que vi fué que yendo de Bayamón hacia San Juan, a mano derecha, después de pasar la vía, detrás de la casilla, donde está el guardabarreras, yo ví una aglomeración de gente que había, y uno o dos automóviles parados allí." Este testigo nada dice que viera al automóvil del demandado alcanzar y pasarle al suyo momentos antes del accidente. Lino Burgos, su chauffeur, aunque dió detalles de que llevando ellos una velocidad de 22 ó 25 millas el au-

tomóvil del demandado les alcanzó y pasó a unos 300 ó 400 metros antes de llegar al paso a nivel del ferrocarril, el récord arroja lo siguiente:

"P.—¿Vió el momento en que el automóvil arrolló al niño? R.—No, señor, vi cuando paró el carro, que aguantó el carro, que corrió un señor, no sé quién era, y levantó al niño de la carretera. P.—¿No vió al niño antes de ser arrollado? R.—No, señor.''

Parece que este testigo del apelado su misión principal era probar la velocidad que podía traer el demandado, o sea, establecer que el demandado caminaba a velocidad exagerada. No aparece, sin embargo, que el demandado mantuviera là misma velocidad, pues otro testigo del apelado, Emilio Ríos, que se encontraba a 10 ó 12 metros del lugar del suceso, manifestó que el demandado no venía ni muy ligero ni muy despacio y que el automóvil antes de cruzar la vía redujo la velocidad y en cuanto al accidente mismo no pudo apreciar "si los niños venían de cruzar la carretera o de dónde venían.''

María Meléndez, prima del demandante, aunque dice que presenció el accidente, admite que poco antes habían pasado dos automóviles en dirección opuesta al demandado y niega que éste hiciera al ocurrir el percance manifestaciones que le inculparan. En esto contradice a Domingo Maldonado, padre del niño, quien por el contrario, impugnado su testimonio, aparece que hizo declaraciones al Juez de Paz de Guaynabo, Julián Castrillo, diciendo que fué un caso casual en que no tuvo culpa el chauffeur porque él mandó a cruzar a los niños sin fijarse que venía otro carro.

Hasta aquí la prueba del demandante y de ella se desprende que el juez inferior no pudo descartar la teoría del apelante, confirmada plenamente con su prueba. El pensamiento del juez parece que estaba fijo en que si el demandado hubiera girado hacia la izquierda se hubiera evitado el accidente. La actitud del juez podía verse además de sus preguntas a los testigos del apelante, especialmente en

el curso de la declaración del testigo Fernando Jiménez que venía en el carro junto a dicho apelante y que en lo pertinente dice como sigue:

"P.—¿Cuando se percató de la presencia de los niños, fué detras del último automóvil? R.—Sí, señor. P.—Desde que se percató de la presencia de los niños hasta ser cogidos por el automóvil, ¿qué tiempo medió, si puede calcularlo? R.—Fué una cosa rápida; sin remedio de evitar la desgracia. (dte.) Son conclusiones del testigo. Eso de que sin remedio; no sabemos que él sea chauffeur. P.—A la velocidad que venía el señor Alvarez, de haber visto a los niños, lo ·hubiera podido evitar? R.—También venían ellos corriendo, y eran dos velocidades encontradas. (Juez) P.—¿Velocidades encontradas o formando ángulo? R.—Sí señor, pero me refiero yo a que el que iba tenía que chocar más pronto, viniendo el otro. P.—Podía haber desviado a la izquierda. R.—Tocaba con los demás carros. P.—¿Ya habían pasado? R.—No, señor, fué una cosa instantánea, rápida. P.—¿Dice que vió venir a dos metros de distancia a los niños? R.—No, señor, yo no he dicho eso. P.—Cuando vió a los niños cruzar, al grupo de niños, por primera vez, dónde los vió? R.—No los ví. P.—¿Cómo dice que estaba corriendo? R.—Al pasar frente al carro. P.—¿No los vió cuando salieron de detrás del último carro? R.—Al pasar, detrás del último carro. P.—La primera vez que los vió, ¿dónde los vió? R.—Al salir del último carro. P.—En relación al carro de Uds. dónde los veían, frente al tapalodo izquierdo, al bumper, o frente al radiador, o dónde? R.—Los ví un poquito hacia la derecha. P.—¿A la derecha de Ud., cuando venían por primera vez? R.—Sí, señor. P.—¿A qué distancia del carro los vió, un poquito a la derecha del carro? R.—Casi pegados, próximamente un metro. Muy próximos. P.—¿Era un carro Essex, pequeño? R.—De cinco pasajeros. P.—¿Sabe si él torció a la izquierda? R.—No me fijé. P.—¿Los niños procedían de la izquierda? R.—De la izquierda. P.—¿Si el señor Alvarez hubiera torcido a la izquierda hubiera evitado el choque? R.—No, señor, ellos salieron seguido y los cogió. P.—Señor Jiménez: ha pasado el último carro, e inmediatamente detrás, como a un metro o dos de distancia, surge un niño y lo viene a ver frente a la derecha del carro; ya han pasado los dos automóviles, ¿qué obstáculo había para que no se tirase a la izquierda y evitara el choque? R.—Los dos carros que estaban allí. P.—Ya habían pasado, mirando en ángulo recto, habían pasado. R.—Lo coge más de frente; si viene así y tira aquí lo coge de frente. (Dmdo.)—Su señoría no se ha dado

cuenta. (Juez)—Me doy cuenta, pero creo que si se tira a la izquierda no los coge. (Dmdo.)—Los coge más de prisa. . . . . P.—Antes de que los carros que iban de San Juan le pasaran a Uds., y antes de llegar al cruce, ¿Ud. no había visto el grupo del padre con los niños en la carretera? R.—No, señor. P.—¿De dónde surgieron, de las entrañas de la tierra? R.—Eran dos carros que venían. P.—Entre Uds. y los carros, no estaban a la izquierda esos niños, esperando que pasaran los dos carros? R.—No me fijé. P.—Las declaraciones aquí son de que era un trozo llano de tres a cuatrocientos metros. Hacia el lado de San Juan venían dos carros; se encontraron allí, en el cruce, donde estaba el guardaagujas y la casa de él; ahora pregunto: ¿de lejos no veían venir esos carros? R.—Sí, señor. P.—¿Entre los carros y Ud. no estaba la casa del guardaagujas y el grupo de niños que esperaban que pasaran los carros? R.—Estarían a la izquierda. P.—¿Ud. no los vió? R.—No, señor. P.—¿Había algo que le impidiera la vista de la casa y sus alrededores? R.—Sí, señor, la casa la veíamos y veíamos los dos carros que venían. Si vemos a los niños yo soy el primero en llamar la atención de que venían. La idea era marchar con prudencia.''

Todo induce a sostener que el juez inferior nunca estuvo bajo la impresión de creer que el accidente sucediera ya cuando los niños hacía tiempo que habían cruzado la carretera y permanecían quietos junto al poste de donde penden las barreras hasta que el apelado los alcanzara con su carro. No explica el récord que sin cruzar el niño la carretera, el demandado tuviera necesidad de desviar su automóvil dirigiéndole hacia él, junto al poste que aparece situado un metro distante de la parte rodante de la carretera. Esto hubiera podido explicarse por un defecto en el guía, una patinada del carro o por una intención dañada o criminal del demandado. Pero no hay base para tal cosa. Los hechos ocurrieron bajo una situación de pura emergencia cuando el niño corriendo atravesaba la carretera, colocándose inesperadamente para el demandado frente a su carro, al cruzar éste con el segundo carro que venía en dirección contraria. Fué una situación de peligro que surgió repentinamente frente a su carro y no aparecen motivos que el demandado pudiera sospechar que tal situación se le pre-

sentara de momento. Cuando el demandado cruzaba con los dos carros que venían en dirección opuesta, éstos le impedían necesariamente descubrir lo que podía existir a su mano izquierda de la carretera, donde aparecían primeramente los niños antes de atravesar, y aun asumiendo que los viera a una distancia de 300 ó 400 metros, como se alega, antes de llegar a la vía férrea, él tenía derecho a suponer que no se moverían del sitio de seguridad en que estaban y no atravesar en circunstancias que ellos no podían ser vistos. Sostener la responsabilidad bajo tales circunstancias tendríamos que llegar a conclusiones verdaderamente absurdas o imposibles. Si para cada uno de los individuos que al azar o por necesidad se encontraren situados en las orillas de las carreteras públicas, fuera de su parte rodante, cada automóvil que marcha a una velocidad estatutoria tuviere que reducir su velocidad hasta pasar de cada persona, equivaldría a suprimir prácticamente el fin para el que fué creado un medio de locomoción que por su misma rapidez se ha convertido en una necesidad social.

[6] La regla general, por tanto, que impone un deber a todo conductor o chauffeur de mantener suficientemente despacio la velocidad de modo que pueda controlar y detener un carro, es aplicable cuando plenamente puede verse el peligro u obstrucción que se le presente delante, pero la regla no es aplicable cuando se trata de situaciones de verdadera emergencia en que no hay razón para esperar que súbitamente uno se confronte con ella.

"Por regla general es el deber del conductor de un automóvil llevar una velocidad lo suficientemente moderada y tener tal control de su carro que pueda parar dentro de la distancia en la cual le sea posible ver claramente una obstrucción o peligro que esté enfrente de él. Pero esa regla no tiene aplicación a un caso en el cual se presentaba inmediatamente enfrente del carro una situación peligrosa que el conductor del automóvil no tenía razón de esperar repentinamente." *Jacobs* v. *Jacobs*, 141 La. 272.

*Por todo lo expuesto, debe revocarse la sentencia ape-*

*lada y dictarse otra declarando sin lugar la demanda, sin
costas.*

El Juez Presidente Señor del Toro y el Juez Asociado
Señor Hutchison están conformes con la revocación pero no
con todos los razonamientos de la opinión en que se funda.