774

FIDEL FRANCO y GUADALUPE LESPIER DE FRANCO, demandantes y apelantes, *v.* INOCENCIA RAMOS, demandada y apelada.

No. 4477.—*Visto:* Junio 27, 1928. *Resuelto:* Noviembre 13, 1928.

*J. B. Soto* y *C. M. Pesquera,* abogados de los apelantes; *F. B. Fornaris,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del bunal.

El primero de mayo de 1924, y en la calle de San Francisco, en San Juan de Puerto Rico, la niña de poco más de siete años Derby Franco, o Derby Deyá, hija de la demandante Guadalupe Lespier, al cruzar de una acera a otra fué cogida por un ómnibus o guagua de pasajeros, número P-958, propiedad de la demandada, y guiada por el chauffeur Carlos Pietrantoni. La niña sufrió tales golpes, con fractura del cráneo, del brazo y de la pierna derecha, que falleció a los

pocos minutos del accidente. Este fué el motivo de la demanda presentada en este caso por Fidel Franco y Guadalupe Lespier, que alegaron ser los padres de la víctima, y y que en las otras alegaciones mantuvieron que el accidente se debió a la negligencia del chauffeur que guiaba la guagua, y que lanzó su vehículo contra la criatura.

Contestó la demandada, negando las alegaciones de la demanda, y sosteniendo como especial y separada defensa que la niña Derby de una manera imprevista e inesperada había surgido corriendo, de una acera a otra, y chocó con el guardalodo trasero derecho de la guagua, sin que el chauffeur, que la conducía de acuerdo con las leyes del tráfico, y a velocidad moderada, pudiera evitar que la niña, en su veloz carrera fuera a chocar contra la guagua.

Es difícil examinar la opinión de la corte inferior sin exponerse a error, ya que unas veces puede creerse, por las citas que hace, que el juez entiende que la razón está de parte de los demandantes, y otras que la tiene la demandada. El caso *Ayers* v. *Ratshesky,* 213 Mass. 589, parece citarse en favor de la teoría de los demandantes, ya que se sostuvo en él un veredicto a favor del demandante. El de *Routh* v. *Weakley,* 154 Pac. 218, en el que se dijo que en una acción contra el propietario de un automóvil que atropelló y mató a una niña de ocho y medio años que, repentinamente abandonó la acera y cruzó diagonalmente la calle, sin mirar hacia adelante, la negligencia contributoria por su parte no se halla establecida como extremo de ley por una conclusión de que ella sabía que tal conducta de su parte era peligrosa, no es una cita de las que justificaran una sentencia como la de este caso.

Más clara y convincente es la cita que en tal opinión se hace, del caso *Marius* v. *The Motor Delivery Co.,* 146 App. Div. N. S. 608. Se declaró en ese caso que fué error de la corte negar una instrucción en el sentido de que si el niño corrió desde un sitio en que se hallaba seguro hasta otro

peligroso muy cercano a la rueda trasera del truck, no había derecho a indemnización, y que un choque entre un viandante y un carro de motor no establece presunción de que el que guía el carro sea negligente. En la misma opinión de que copiamos, se sienta la doctrina de mejor lógica jurídica en cuanto a la apreciación de la negligencia contributiva por parte de un menor, dándola como base y fundamento la capacidad, inteligencia y condición física del menor y con ella su facilidad para apreciar determinado peligro.

La corte inferior declaró que no le merecieron crédito dos testigos de la demandada, por las contradicciones en que incurrieron. Ciertamente, si hay un caso en que no sólo el testimonio de determinadas personas sea contradictorio, sino la prueba entera se halle afectada por ese sentido de contradicción, es este caso. La corte de distrito, al menos decidió en favor de las contenciones de la demandada las dudas que de la prueba surgieron; y en ese sentido fué la sentencia, de la que ha apelado la parte demandante.

La apelante señala cinco errores. De ellos los marcados con los números I y IV, son relativos a la apreciación de la prueba; y el marcado con el número V, demasiado general, puede también serlo. Su lectura es ésta:

"1.—La corte cometió error al resolver que fué imposible al chauffeur de la guagua causante de los daños prever y evitar el accidente.

"4.—La corte cometió error al resolver que no hubo prueba de que la velocidad de la guagua era exagerada.

"5.—La corte cometió error al dictar sentencia declarando sin lugar la demanda."

█ Tal como la prueba se produjo en este caso, la conclusión a que la corte llegó parece la más correcta. El hecho que de la prueba resulta, es que la niña, que se hallaba en una de las aceras de la calle de San Francisco, corrió para atravesar la calle e ir a la otra acera, en el momento en que pasaba el ómnibus o guagua, y chocó contra el guardalodo derecho de la parte de atrás de la guagua, y fué cogida por la rueda

trasera de la misma, recibiendo así los golpes que la causaron la muerte. Para la corte inferior, y como materia de hecho, fué claro que el suceso ocurrió de esa manera, y como consecuencia, es de deducir la de que el chauffeur, que iba en la parte delantera del vehículo, y mirando hacia adelante, no pudo darse cuenta de la salida de la niña y evitar así el accidente. No encontramos en tal apreciación de evidencia error manifiesto que nos incline a revocar el juicio formado por el juez de distrito, ni se ha acusado pasión, parcialidad o prejuicio. Seguimos la constante jurisprudencia de este tribunal, respetando, en caso como éste, la apreciación de la prueba, por carecer de motivo legal para otra resolución.

No hubo prueba de que la velocidad en la marcha de la guagua, fuera excesiva—ha dicho la corte de distrito. Entendemos que tal apreciación fué sana y discreta. Quizá pudiera decirse que faltó la prueba que autorizó al juzgador para decidir acerca de la velocidad en la marcha de la guagua; tales fueron las declaraciones de los testigos y las contradicciones en que algunos incurrieron, que pudo llegarse a la conclusión de ausencia de prueba.

El señalamiento de error número 2, es así:

"2.—La corte cometió error al resolver que la doctrina ordinariamente aplicable a casos de la naturaleza del presente, es la de que un niño que encontrándose en sitio seguro lo abandona yendo a uno de peligro frente a una máquina o vehículo no puede recobrar daños por perjuicios sufridos como consecuencia de un accidente."

Podíamos preguntar en qué condiciones pusieron las partes a la corte, para apreciar la capacidad o inteligencia de la niña víctima de este accidente, y su consciente perceptividad del peligro, y aun de los medios de evitarlo. En la evidencia presentada en el caso, no encontramos nada que tendiera a eso, en cualquier sentido. Y es precisamente un elemento de gran importancia, ya que no puede exigirse a un niño de retardado desarrollo intelectual, y aun físico, el mismo cuidado que a un niño despierto, ágil y vigoroso; y de ese

cuidado y de sus grados, puede depender en estos casos la solución de importantes problemas. Véase el caso *Marius* v. *The Motor Delivery Co., supra;* y asimismo el también citado *Routh* v. *Weakley,* en cuanto al razonamiento para confirmar la sentencia. Aunque los hechos del caso no son exactamente los mismos, es de aplicación aquí lo dicho por este tribunal en su decisión en *Meléndez* v. *Alvarez,* 35 D.P.R. 343, en donde se citan también el caso *de Jesús,* v. *Ayende,* 32 D.P.R. 444, y *Lawrence* v. *Goodwill,* 44 Cal. App. 440, 186 Pac. 781.

Cuando surge inesperada, súbitamente, un riesgo inminente, no es posible exigir a los seres humanos que se sobrepongan de una manera instantánea a la natural impresión de temor, a la perturbación en las funciones del cerebro que sigue a esa impresión, y que guarden el equilibrio que en circunstancias ordinarias debe existir en ellos. Otra cosa sería desconocer la naturaleza humana. Son raros los casos en que el peligro inesperado y súbito no perturba a quien se encuentra por él amenazado. La absoluta posesión de sus facultades, y su dominio, en un momento así, son dones excepcionales.

Es evidente que hay gran número de autoridades en uno u otro sentido: ya para sostener que los menores no pueden ser culpados de negligencia contributoria, ya para sostener que pueden serlo en ciertos casos, de acuerdo con determinadas circunstancias. Y así la parte apelante cita la autoridad de 20 R. C. L. 127, y la del caso *United States Natural Gas Co.* v. *Talmadge Hicks,* de Kentucky, citado en 23 L.R.A. 249, en apoyo de su contención; y la apelada cita también gran número de casos (*Stall* v. *Sollenberger; Eichman* v. *Bucheit,* 128 Wis. 385, y otros) en favor de la que él sostiene.

Pero es indudable, que:

(*a*) Existe una presunción de que el menor de catorce años, no es responsable, generalmente, de negligencia contributoria, y que para establecer tal negligencia de su parte, sería preciso probar que él tenía suficiente inteligencia y dis-

creción para darse cuenta del resultado de sus actos. Y existe la presunción de que cuando llega a los catorce años, distingue lo bueno de lo malo, discierne, y es responsable de sus actos.

(*b*) Generalmente, el que guía un vehículo de motor tiene el derecho de asumir que una persona que se halla en sitio seguro no abandonaría repentinamente su posición, para colocarse en el paso del vehículo.

(*c*) Que si un niño corre hacia el lado (parte lateral) de un automóvil, o si corre desde un sitio seguro a uno peligroso, inmediato al frente del vehículo, generalmente no puede obtener indemnización por los daños que le resulten.

Las circunstancias de este caso, no son las propias para obtener una indemnización. La corte de distrito ha dado una idea de cómo estima los hechos, en dos párrafos de la opinión, en que dice:

"De la declaración de los testigos puede verse que ha sido éste un accidente, inesperado y desgraciado, que, aun cuando haya declarado el chauffeur que guiaba la guagua que no vió a la niña, el accidente fué imposible de preverlo y evitarlo, por cuanto de las declaraciones de los testigos se desprende que la niña iba caminando por la acera, por la calle San Francisco, en dirección Este, y que la guagua venía con dirección a Santurce, que de pronto esta niña abandonó la acera y se lanzó a cruzar la calle rápidamente, corriendo; y fué el peligro tan inminente que de la declaración del Cabo Casiano se desprende que él lanzó un grito al ver que la niña corría de ese modo, y trató de agarrarla por el vestido, para que no chocara, en un supremo esfuerzo para evitar el accidente, logrando sólo quedarse con algunos girones de la vestidura de la niña. Aparece de la prueba además que la niña no chocó con la parte delantera de la guagua, sino que fué con la parte lateral del tapalodo derecho de la guagua, existiendo algún conflicto en la prueba en cuanto a si fué con el tapalodo delantero o el trasero. Pero de todos modos, se desprende claramente que la niña chocó con el costado derecho de la guagua, y fué arrollada, pasándole la rueda trasera por encima."

"De modo que aquí puede decirse que la rápida salida de esta niña de la acera presenta una situación de rápido peligro, aún en

el caso en que el chauffeur la hubiera visto, y entonces, aun así, la cuestión a resolver hubiera sido si la velocidad que llevara el automóvil en esa ocasión fuera tan exagerada que a pesar de la negligencia contributoria de la niña, hubiéramos podido decir que el accidente pudo haberse evitado a no ser por esa circunstancia. Pero aquí no ha ocurrido eso, pues la única prueba consiste en que el chauffeur no vió la niña. Él no nos dice que no la vió, sino que manifiesta que no se dió cuenta de su presencia ni del mismo accidente en sí, hasta que le avisaron ·más adelante que parara, que había ocurrido el accidente; y los propios testigos de los demandantes nos informan que la niña chocó con el costado de la guagua. En esta ·situación, no le podemos exigir al chauffeur la obligación de haber visto la niña y anticiparse lo que iba a ocurrir con el costado de su vehículo, pues esta obligación es únicamente extensiva a lo que ocurre al frente.''

Con estos hechos era imposible declarar que el chauffeur incurrió en negligencia, ni que llevaba su vehículo a una velocidad peligrosa. Y la doctrina legal a aplicar, no puede ser otra que la que se aplicó por la corte, que no cometió el error señalado bajo el número II.

Bajo el número III se hace por la parte apelante el señalamiento que sigue:

''III.—La corte cometió error al resolver que es aplicable a este caso la jurisprudencia sentada en el caso de *Meléndez* vs. *Alvarez* y resuelto por este Hon. Tribunal Supremo de Puerto Rico el día 27 de abril de 1926.''

No estamos conformes con la apelante. La corte no se fundó exclusivamente en la doctrina del caso *Meléndez* v. *Alvarez,* aunque quizá pudo hacerlo, aceptando los principios generales del mismo, sin que ello fuera error.

El señalamiento de error que aparece bajo el número V, es excesivamente general, y en realidad comprende los otros señalamientos.

Encontramos en este caso algo que no parece haber merecido la atención de las partes litigantes, pero que no puede pasar desapercibido para el tribunal, que, de acuerdo con la Sección 1141 de los Estatutos de Puerto Rico, Comp. de 1911,

"puede también entender en todos los hechos y tramitaciones de la causa tal como aparecieron en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias y demoras."

Según aparece de estos autos (páginas 6, 7, 8, 9 y 10) del legajo, ante la corte de distrito compareció Juan Deyá, pidiendo la sustitución de parte demandante, y alegando que Guadalupe Lespier, también demandante en este pleito, estuvo casada con el compareciente, y de ese matrimonio tuvieron a la niña Derby Deyá y Lespier, que fué la víctima del accidente de que se trata en el pleito; que la demanda fué entablada por Fidel Franco y Guadalupe Lespier, alegando ser los legítimos padres de aquella niña, a la que se llamó en las alegaciones Derby Franco; que el compareciente es heredero forzoso de la menor; y pidió que se incluyera su nombre en el pleito. Acompañó las certificaciones de su matrimonio con Guadalupe Lespier, y de nacimiento de la niña Derby Deyá y Lespier, inscrita en el Registro Civil de Ponce como hija legítima de Juan Deyá y Guadalupe Lespier, y la de sentencia de divorcio pronunciada por la corte de distrito de Ponce en caso civil *Guadalupe Lespier* v. *Juan Deyá*, en 14 de noviembre de 1918, de la que aparece decretado el divorcio, y puesta la menor Derby Deyá y Lespier bajo el cuidado y patria potestad de la madre, Guadalupe Lespier.

Con respecto a esta moción, la corte de distrito, en la opinión que se une a la sentencia, dice que la moción no fué notificada a las partes, y por ello no procede que se resuelva con respecto a ella.

Parece que el compareciente en la moción, heredero forzoso de la víctima, título por él invocado, no quiso ir más allá, y no ha realizado ninguna otra gestión judicial. Pero de todas formas, no su petición, sino los documentos, que con ellos presenta, plantean un problema que debió ser resuelto de una manera directa. La alegación de ser la víctima del accidente la hija legítima de los demandantes Fidel Franco y Guadalupe Lespier queda destruida por los documentos

que con aquella moción se presentaron. Y como en los litigios no se puede prescindir de la realidad, y los hechos son tales hechos, cualquiera que sea la ley, este punto exigía una resolución directa y final.

Es para este tribunal un hecho que la demanda en este caso no debió contener el nombre de Fidel Franco, como demandante, ni alegación alguna que a él se refiriera. Pero aparece en este documento Guadalupe Lespier, madre de la niña Derby, con patria potestad sobre ella, y Guadalupe Lespier pudo ejercitar la acción, y era persona que podía ejercitarla, de acuerdo con la ley. Esto ha debido decirse al resolver el caso.

*No existen los errores señalados, por lo que la sentencia apelada debe ser confirmada.*